JAMES E. BENNETT *vs.* S. BLUMENTHAL & COMPANY, INCORPORATED.

Third Judicial District, Bridgeport, April Term, 1931.
MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 14th—decided June 1st, 1931.

*Harold E. Drew* and *Frederick H. Wiggin,* for the appellant (defendant).

*Robert J. Woodruff,* with whom, on the brief, was *Louis Shafer,* for the appellee (plaintiff).

HINMAN, J. Chiffon frames, consisting of a pair or set of wooden frames, equipped with hooks, to be connected by a paper core, are required for the shipping of certain kinds of velvet manufactured by the defendant. The plaintiff had been making such frames for the defendant since 1923. He alleged, in general terms, and offered evidence to prove that, late in April, 1928, he called upon the general manager of the defendant's Shelton plant regarding the requirements as to the number of chiffon frames for the ensuing season, in order that he might prepare by purchasing the necessary lumber and other supplies. He was referred to Mr. Tooker, assistant purchasing agent, who did the purchasing at the Shelton plant, and after conference between them and Mr. Fitz, plant engineer, the defendant, through Tooker, entered into an oral agreement with the plaintiff whereby the plaintiff agreed to manufacture for the defendant and the latter agreed to purchase, two thousand sets or pairs of frames per week for six months commencing May 1st, 1928, at a price of ninety-six cents per set. The plaintiff thereupon ordered a quantity of materials substantially sufficient to manufacture that number of

frames, and made and delivered about twenty thousand sets, but the defendant thereafter refused to accept any further frames.

It appears from the finding that the defendant claimed and offered evidence that no such oral agreement was made; also that Tooker had no authority to contract for goods except upon written purchase orders, and that the plaintiff had notice of such limitation through course of dealing with the defendant covering a number of years, upon written orders bearing, on the reverse side of each, an endorsement that "No orders will be considered valid unless written. Orders given orally or by telephone must be confirmed in writing."

The defendant requested a charge that while ordinarily a purchasing agent has authority to make purchases of supplies, "if facts known to the plaintiff showed that [such] agent had limited authority only, the defendant is not bound by acts beyond the limits of that authority. . . . If therefore, in this case, you find that Bennett knew, from previous orders placed with him by the defendant, or in any other manner, that Tooker had no authority to make the oral agreement alleged in the complaint, your verdict must be for the defendant, even if you find that Tooker did make the alleged agreement." On this subject the court charged in substance that if the jury found that Tooker was authorized or was held out by the company as authorized to make such a purchase and to give such an order, and that he did in fact give it, the corporation is bound by his act, and "unless you find from the evidence that his authority was limited and that the plaintiff knew it, you will be justified in finding that he had authority to bind the defendant. . . . If you find that such an agreement was made between the plaintiff and the duly authorized agent of

the defendant, then it is binding upon the defendant, and the fact that it was an oral agreement makes no difference. It is just as good as if it was a written agreement, if you find it was in fact entered into."

The defendant does not appear to have denied the authority of Tooker to enter into a contract of the terms alleged, but contended that his authority was limited to purchase orders in writing, or confirmed in writing, that the plaintiff had knowledge of this limitation, and that the agreement in suit, being oral only, was in excess of Tooker's authority, as known to the plaintiff, and not binding on the defendant. The reasonable and probable effect of the charge given on this point would be to convey the impression that if the subject-matter of the contract was within the authority of Tooker, the fact that the alleged agreement was oral instead of in writing was immaterial. The failure to make clear the real point upon which the defendant relied as to the binding force, upon it, of the agreement, if the jury found it to have been made (as the verdict imports that they did), and the consequence of permitting to be made determinative thereof the agent's authority regarding the subject-matter rather than the claimed limitation of his authority as to orders or agreements in writing, might have operated to the defendant's substantial disadvantage. Upon the same issue, Tooker testified that he had instructions from the defendant company as to how he could place orders for supplies, but a further question calculated to elicit whether those instructions limited him to written orders was excluded. Proof of such a limitation of the apparent scope of the agent's authority was a necessary step toward establishing the claimed ineffectiveness of an oral contract to purchase, and the evidence contemplated by the question was admissible although, of course, no such limitation

would avail unless, also, knowledge of it was brought home to the plaintiff. *Quint* v. *O'Connell*, 89 Conn. 353, 357, 94 Atl. 288; *Knapp* v. *Tidewater Coal Co.*, 85 Conn. 147, 157, 81 Atl. 1063; *Lyndon Mill Co.* v. *Lyndon L. & B. Institution*, 63 Vt. 581, 22 Atl. 575, 578; 14A Corpus Juris, p. 403.

The finding is that the plaintiff's evidence placed the total number of frames delivered to the defendant, under the contract alleged, and accepted and paid for, at twenty-three thousand two hundred and seventy-five sets, while the defendant's evidence was that the number delivered between May 1st and October 1st was twenty-four thousand eight hundred and fifty-three sets, and subsequent to October 1st four hundred and ten sets. The claimed contract called for the purchase and acceptance by the defendant of a total of fifty-two thousand sets. The trial court, in referring in the charge to this feature of the case, stated: "I think it is not disputed that a good many less frames were delivered than the alleged contract called for, and there is no serious difference, as I recall the evidence, between the number of frames which the plaintiff says he delivered and which the defendant admits it received. I think the defendant claims to have received just a few more than the plaintiff claims to have delivered, but that isn't essential—it isn't a large difference." This statement is assigned as error.

The difference in figures in question did not affect the plaintiff's right of recovery, but if that right was sustained the actual number delivered and paid for was material to the amount of damages to be awarded which, as to this element, as the court charged, would be based upon the profit (which the evidence placed at twenty cents per set) upon the number of sets contracted for but which the defendant failed and re-

fused to accept. While recollection of the testimony and the conclusion therefrom as to such number of sets was ultimately the function of the jury, the probable effect of the statement quoted would be to lead the jury to disregard, as negligible in amount, the excess claimed by the defendant above the plaintiff's figures, as to the number of sets delivered, although the claimed difference—on the finding, and disregarding further claims of the defendant hereafter mentioned—amounted to approximately two thousand sets and, consequently, involved an alleged profit of about $400.

The above-mentioned portions of the charge, and ruling, which we regard as erroneous for the reasons stated, require a new trial and we limit discussion of further features presented by the appeal to such, only, as may be serviceable in that event.

The disparity just mentioned between the claims of the parties as to the number of sets delivered appears to have arisen largely from a question whether about one thousand sets delivered between May 1st and May 8th, applied on the contract or were under a prior order for three thousand sets given April 23d. In addition, the defendant ordered, accepted and paid for four thousand sets, at eighty cents each, in January, 1929, for which the defendant, under its assignment as to the amount of damages awarded, claims credit in reduction of the difference on which prospective profits could be computed. Some instruction adapted to guide the jury in determining what deliveries should be applied on the contract quantity, as distinguished from those not referable thereto, would have been advisable and helpful.

The case under the amended complaint was based upon an alleged oral agreement as to the quantity of frames and a price therefor of ninety-six cents per

set. The evidence and fair inferences therefrom are sufficient at least to withstand the appellant's motion to strike out the finding that the plaintiff offered evidence that this price was a part of the agreement. Lacking such correction, discussion of the consequences of absence of such an agreement as to price becomes unnecessary. The defendant requested a charge that "unless [the jury] find that the plaintiff has proved that he agreed to manufacture that number of frames at that price for the defendant there would be no consideration for a binding contract." A fair construction of the charge as given is that the plaintiff, in order to recover, must prove that the parties agreed upon the price as stated, as well as the other essential element of the claimed contract, and we regard the instructions sufficient, in this respect, for the purposes of the case reflected by the finding.

One further topic invites discussion. The finding states that the plaintiff offered evidence that when the defendant declined to take further frames he had on hand twenty-three thousand feet of whitewood lumber, specially adapted to and sawed for making the frames, which cost $110 per thousand, also a large quantity of special screws, nails, and shellac, purchased for the purpose of manufacturing the number of frames called for by the contract. The defendant is entitled, on the record, to have the finding corrected by striking out the further statements that evidence was offered by the plaintiff that the lumber had no value in the market except for making chiffon frames, and that the screws, nails, and shellac had no value in the open market. The trial court charged, in effect, that if the plaintiff was found to be entitled to damages the measure thereof would be the profits which he would have earned had the contract been fully carried out—the profits which "in the ordinary

course of events he would have received." Under the finding as we have corrected it, such loss of profits was the only element available, upon the evidence, in the computation of damages, and the instruction given was correct. *Churchill Grain & Seed Co.* v. *Newton,* 88 Conn. 130, 134, 89 Atl. 1121; *Home Pattern Co.* v. *Mertz Co.,* 86 Conn. 494, 505, 86 Atl. 19; *Belisle* v. *Berkshire Ice Co.,* 98 Conn. 689, 700, 120 Atl. 599; *Zimmerman Radio Corporation* v. *Bronson & Townsend Co.,* 108 Conn. 632, 635, 144 Atl. 301; 24 R. C. L. p. 118; General Statutes, § 4684. Upon a state of proof such as indicated by the finding before correction, elements of damage other than prospective profits would also be involved. "If in preparation for manufacture the seller has made outlays in materials, etc., he is entitled to recover [in addition to the difference between the cost of manufacture and the price to be paid] the difference between the value of such materials, etc., for other purposes and what he has expended thereon; otherwise he would not be compensated for his actual loss." 24 R. C. L. p. 119; *Chicago* v. *Greer,* 76 U. S. (9 Wall.) 726, 19 L. Ed. 769; 94 A. S. R. 122, note.

The finding also states that the plaintiff had paid $25 per month for storage of the lumber up to the time of the trial. Such expense is recoverable, in a proper case, but only until the seller is enabled to re-sell to reasonable advantage. *A. B. Murray Co., Inc.* v. *Lidgerwood Mfg. Co.,* 229 N. Y. Supp. 664; 2 Williston on Sales, p. 1391.

There is error and a new trial is ordered.

In this opinion the other judges concurred.