EDWARD J. MCMAHON *vs.* THE BRYANT ELECTRIC COMPANY.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, JS.

398

Argued April 9th—decided May 14th, 1936.

*David S. Day,* for the appellant (defendant).

*Richard S. Swain,* with whom, on the brief, was *Edward J. McCarthy,* for the appellee (plaintiff).

HINMAN, J.  The complaint alleged that in January, 1934, the plaintiff and the defendant entered into a verbal agreement whereby the plaintiff was to furnish the defendant a sales promotional program divided into twelve monthly plans, the defendant to pay therefor an agreed sum per plan; that the plaintiff performed the contract to and including April but the defendant then refused to proceed further.  The answer was a general denial.  On the trial the plaintiff gave evidence that he was engaged and experienced in

the business of advertising and sales promotional work specializing in the industrial, and particularly the electrical, field. Commencing in June, 1933, he had numerous conferences with various representatives of the defendant concerning supplying it with a "Sales Activator Plan" to consist of twelve monthly units, each consisting of a cover and several pages of information concerning defendant's products, to be sent to its distributors and their salesmen. Negotiations continued until, shortly after January 1st, 1934, an agreement was consummated and performance proceeded with. In the meantime, in October, 1933, the plaintiff had made arrangements with the Wilson H. Lee Advertising Agency, hereinafter called the Agency, a subsidiary of the Wilson H. Lee Company, printers, referred to as the Company, whereby he was to have the use of the facilities of the former and was to give the contracts for all printing of his business to the latter, in anticipation of which the Agency advanced to him $60 per week. The plaintiff told the defendant that he would have the Company do the printing of the units and at his request it was agreed that the entire monthly cost to the defendant should be billed through the Agency. This practice was followed and payments were made to the Agency to and including April.

By April Mr. Badeau, who had been in charge of defendant's advertising, retired and was succeeded by Mr. Herold, and in May the defendant terminated its contract with the plaintiff. Thereafter for the remainder of 1934 Herold wrote the copy for the monthly units but they were issued in accordance with the plaintiff's Sales Activator plan. The price which, under the agreement, the defendant was to pay was $325 per monthly unit; the "out of pocket" expense to the plaintiff for the remainder of the year after April would have been from $75 to $100 per month. On

this basis his loss of profit would amount to from $1800 to $2000. The jury's verdict was for $1950 damages.

The purport of the evidence for the defendant was that in October, 1933, the Agency employed the plaintiff as a salesman at a salary of $60 per week; that the defendant understood that the plaintiff was acting for the Agency and that the agreement was being made with it and not with the plaintiff personally; that the defendant would not have contracted with the plaintiff individually; and that the contract was made with the Agency and not with the plaintiff.

It is apparent from a study of the evidence that if the jury could and did accept substantially the testimony of the plaintiff as to his relations and arrangements with the Agency and the history and details of his negotiations with the defendant and the agreement finally arrived at, they reasonably could conclude that the contract was with him personally and not with the Agency. The credibility of the respective witnesses of course was for the jury to determine. The officers and employees of the defendant who testified were subject to the same considerations of adverse interest as the plaintiff, and the Lee Company and Agency the representatives of which testified had, it appears, made a substitute agreement with the defendant following the termination of the original contract. The chief reliance of the appellant to discredit the plaintiff's testimony is upon the documentary evidence, but we do not find this to be so irreconcilable with the material points of his evidence as to require the jury to reject it. Certain letters to the defendant bear the signature (in typewriting) of the Agency followed by that of the plaintiff, but the suggestion readily occurs that the Agency signature may well have been a customary office routine which, as plaintiff says, he may have fol-

lowed "without thinking of the legal aspects." Also letters which relate to the plan in question, while dictated by the plaintiff, appear not to have been signed by him personally; the others relate to trade paper advertising or other distinctively Agency business, to which an Agency signature would be appropriate. The pay-roll card and the entries on pay-rolls are not necessarily inconsistent with a weekly drawing account to the plaintiff, such as he claims to have had, instead of a flat salary. As, according to plaintiff's claim as to the arrangement with the defendant and the Agency, the entire contract price was to be billed by the Agency, it is not illogical that it should be so charged on the Company's ledger. The inclusion of the production cost and price of the Activator plan, and the difference as "profit" in a statement of business produced by the plaintiff, made up by the Agency, is not of controlling significance. The statement was prepared for the purpose of determining if the $60 per week allowance to the plaintiff was justified, and the result was a reduction to $40. It was not inconsistent with the plaintiff's version of his arrangements that comparison of the debits for services and materials furnished by the Company for the units with credits for the total amount received by it on account of the plan should be taken into account in that connection, or that no bills for the services and materials were rendered to the plaintiff. Under the arrangement as claimed by him, the accounting, billing and collecting for the plan were entirely in the hands of the Agency and his profit was being absorbed in his weekly withdrawals.

It appears from the defendant's evidence, as well as that of the plaintiff, that the representative of the Agency who made the arrangements with him knew of his experience and connections with advertising in

the electrical field and particularly of a plan pertaining to rural electrification upon which he was working which, if realized, would involve large contracts for printing. This lends color to the plaintiff's claim that the arrangement was for a drawing account against commissions on orders which he might be able to bring to the Company rather than employment upon a stated salary covering all benefit from all of his plans and prospects. All in all, we conclude that, whether or not the trial court or this court would have reached a like result, it was open to the jury reasonably to find, upon evidence which they were not precluded from accepting, that the contract was with the plaintiff and that he was entitled to recover damages for its breach by the defendant.

The appellant urges, as a further ground for attack upon the verdict, the failure of the plaintiff to prove, as an element of deduction from the contract price in the computation of profits for the remainder of the term of the contract after the breach, as the measure of damages, the amount which he earned from other employment in the time which he would have had to devote to the performance of the contract. As later it appears from our discussion of the charge, deduction upon this basis was not adapted to the present action. We find no error in the denial of the motion to set aside the verdict.

The appellant assigns error in that the charge included instructions regarding the effect of the statute of frauds (General Statutes, §§ 5982, 5983) upon the contract alleged and claimed to have been proved by the plaintiff, although the defendant did not raise that as a defense. It appears from the finding that the contract relied upon, if established, might be found to be one not to be performed in one year from date of making, or one for the sale of goods of a value of more

than $100, and so within one or both of these sections. The defendant was entitled to take advantage of the statute under its general denial, without specially pleading it. Practice Book, § 104. Therefore, the matter was not foreign to the case and the court might well, as it obviously did, regard it as essential, or at least appropriate. *Gross* v. *Boston, W. & N. Y. St. Ry. Co.*, 117 Conn. 589, 596, 169 Atl. 613. The omission to note the exception, from § 5983, of goods manufactured by the seller especially for the buyer was prejudicial, if at all, to the plaintiff rather than the defendant. Also, we are unable to see any reasonable probability that the charge on this subject could have induced confusion in the minds of the jury as to the actually contested issues or caused them to be lost sight of. *Williamson, Ltd.* v. *Perry,* 111 Conn. 317, 322, 150 Atl. 17. Clearly the effect could not be comparable with the instance relied upon by the appellant —potential prejudice to the defendant in a negligence action through the uncalled for injection of the doctrine of supervening negligence which would justify a verdict for the plaintiff notwithstanding his own negligence. *Fine* v. *Connecticut Co.,* 92 Conn. 626, 630, 103 Atl. 901.

We regard as equally remote any likelihood of disadvantage to the defendant from such ambiguity or technical inaccuracy as pertains to the statement, in connection with the instruction as to the effect of part performance upon the application of the statute of frauds, that it was admitted that "the plaintiff delivered several units of his Sales Activator Plan, and that the defendant paid for them." On the record it was uncontroverted that the "plan" was the plaintiff's; confessedly the units delivered were paid for. It was not admitted that any units were delivered by the plaintiff personally. As we have seen, the crucial issue

throughout the trial was whether the plaintiff acted and contracted for himself or for the Agency, and it is unthinkable that the jury could have construed this statement as removing or affecting that issue. Whether or not they understood "delivery" as, we judge by the memorandum on the motion to set aside the verdict, the court intended it, as referring to the copy, preparation of which by the plaintiff personally was contemplated by the contract, it was contained in and obviously made only for the purpose of the charge relating to the statute of frauds. This was followed by separate and thorough instructions dealing with the major issue of whether the contract was with the plaintiff personally or with the Agency through the plaintiff as its agent. We agree with the trial court that it is not credible that the jury would take this single sentence out of its context and apply it to another and conspicuously contested issue; also with its statement that, even if they did, "it is inconceivable that the matter of delivery would have had any bearing on their determination of the question as to whether the original contract was entered into by the plaintiff personally or as agent."

After discussing the issue whether the contract of the defendant was with the plaintiff personally or with the Agency, the court instructed the jury that if they found the latter to be true their verdict must be for the defendant, but if the former they would have to consider the further claim of the defendant that by reason of the plaintiff's conduct he was estopped to claim that the contract was with him personally. The general principle of estoppel was stated to be that "when one person by his acts, representations or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other

rightfully relies and acts upon such belief, so that he will be prejudiced if the former is permitted to deny the existence of such fact, the former is estopped to deny the existence of the fact." The court then proceeded carefully and at length to apply this principle to the claims of proof in the case, and then summarized, in substantial compliance with defendant's request to charge, that if the jury found that the defendant entered into the contract in the belief that it was with the Agency and that this belief "was reasonably induced by acts, representations, or conduct of the plaintiff which amounted to the representation that he was acting as the agent of the Lee Company," then he is estopped from claiming that he was acting for himself alone. "If you find . . . such estoppel has been proved against the plaintiff . . . you must return a verdict for the defendant." Criticism of this portion of the charge is limited to two sentences in the discussion intervening between the statement of the principle and the concluding summary, above quoted. It is claimed that those sentences were such as to convey the impression that representations, in order to create an estoppel, must be false, whereas, it is asserted, estoppel might be raised if the plaintiff, without falsity, stated his relationship in such a manner that the officials of the defendant could justifiably draw and act upon the conclusion that the plaintiff was representing the Agency. We think that the attacked sentences are fairly to be construed and would be understood by the jury as meaning that the representations must be such as to be calculated to create a false impression that the plaintiff was acting as agent instead of individually, rather than that they must be false in themselves. Even if they were susceptible of the construction claimed by the defendant, we do not believe they could have had effect prejudicial to it in

view of the repeated accurate statements of the guiding principle. An inadvertently inaccurate statement extracted from a charge by a process of critical dissection will not be regarded as reversible error unless it is reasonably probable that the jury would have been misled by it. *Ghent* v. *Stevens,* 114 Conn. 415, 419, 159 Atl. 94; *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 Atl. 611.

The court charged that "this being a claimed breach of contract for the sale and delivery of merchandise, the plaintiff's measure of damages is the amount of profits which he would have made on the units . . . which the defendant refused to take and pay for. . . . —the difference between what it would have cost him to produce the eight remaining units and the contract price for these units." This accords with the accepted rule. 3 Sutherland, Damages (4th Ed.) p. 2695; 2 Sedgwick, Damages (9th Ed.) § 752, § 614; *Bennett* v. *Blumenthal & Co., Inc.,* 113 Conn. 223, 229, 158 Atl. 68; *United States* v. *Behan,* 110 U. S. 338, 28 L. Ed. 168, 170, 4 Sup. Ct. 81. The appellant does not complain of this instruction, as far as it goes, but assigns error in the failure to charge, further, as requested, that in computing the cost there should be included "the compensation received during said period by the plaintiff for his services representing the time which it would have been necessary for him to have employed in the preparation of the Activator Plan for said months of May to December, 1934, inclusive, if the contract had been continued." As is apparent from the purport of the request and the citation to it of *Grant* v. *New Departure Mfg. Co.,* 85 Conn. 421, 83 Atl. 212, the defendant thereby sought to invoke a doctrine applicable to actions seeking recovery for deprivation of a contract for personal services for a determinate period, as distinguished from one for the

performance of specific work or the accomplishment of a specific purpose under which the contractor may either do the work in person or by his servants or others or, perhaps, sublet it to a stranger. Cases of the latter class are illustrated, and the distinction between them and contracts for personal services is noted in *Jewett* v. *Wilmot,* 51 Neb. 700, 702, 71 N. W. 775 (plastering of school buildings); *Jowers* v. *Dysard Construction Co.,* 113 S. C. 84, 87, 100 S. E. 892 (construction of manholes and flush tanks); *Di Luck* v. *Bradner* Co., 111 Wash. 291, 293, 190 Pac. 904 (laying terrazzo floors); *Gibney* v. *Turner,* 52 Ark. 117, 119, 12 S. W. 201 (furnishing and erecting gutter); *Columbus Mining Co.* v. *Ross,* 218 Ky. 98, 101, 290 S. W. 1052; *Harness* v. *Kentucky Fluor Spar Co.,* 149 Ky. 65, 70, 147 S. W. 934 (mining operations). The doctrine of mitigation of damages, applicable to contracts of employment of personal services, does not extend to contracts of this class; the party injured is not obliged to "seek and perform other contracts for the benefit" of the breacher of the contract. *Harness* v. *Kentucky Fluor Spar Co.,* supra.

The present action was pleaded and presented by the plaintiff as one for breach of a contract for the production and delivery of monthly units of the Activator plan and the charge as given was adapted thereto, while that requested would be appropriate to a case based, instead, upon a contract for personal services of the plaintiff. The facts found seem to indicate, however, that while the general nature of the contract was one for production and delivery of the monthly units, an important element in it was that the plaintiff's specialized experience and ability was to be devoted to and utilized in the production of them, and in that aspect it might savor of a contract for personal services rather than one under which it was

immaterial by whom the work was done so long as the units contracted for were produced and delivered. But if we were to accord predominating effect to this feature and regard the requested charge as appropriate to the nature of the contract as disclosed by the finding, yet the defendant was not entitled to have it given unless and until it had offered evidence that the plaintiff was, or by proper diligence could have been, otherwise gainfully employed during the time which it would have been necessary for him to have devoted to the preparation of the Activator plan. "The plaintiff was not bound to offer any evidence upon that question until it was opened by the defendant." *Grant* v. *New Departure Mfg. Co.*, supra, p. 426; *Pollak* v. *Danbury Mfg. Co.*, 103 Conn. 553, 559, 131 Atl. 426; *Safford* v. *Morris Metal Products Co.*, 97 Conn. 650, 656, 188 Atl. 37; *Krawitz* v. *Ganzke*, 114 Conn. 662, 665, 158 Atl. 906. The finding, by which we must test the charge, affords no indication that any such evidence was offered or that the question was in any way so "opened" as to require the trial court to give the charge requested, or to render it proper to do so.

There is no error.

In this opinion the other judges concurred.