HELEN S. ALLARD, ADMINISTRATRIX (ESTATE OF HARVEY E. ALLARD) *v.* CITY OF HARTFORD ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

Argued October 9, 1963—decided January 8, 1964

*Leo Parskey,* for the appellant (plaintiff).

*William P. Aspell,* with whom, on the brief, were *George Muir* and *Edward J. Foley,* for the appellees (defendants Beckwith et al.); with him also were *Jerome T. Malliet,* corporation counsel, and, on the brief, *Richard W. Shettle,* assistant corporation counsel, for the appellee (named defendant).

MURPHY, J.  The plaintiff is the administratrix of the estate of her husband, Harvey E. Allard, who died on July 31, 1960, following major brain surgery.  She alleged that her husband was assaulted by two members of the Hartford police department and that they fractured his skull and inflicted other critical injuries to his head which made the operation necessary.  She brought suit against these two officers and seven other members of the Hartford police department as well as the city of Hartford, seeking damages for his death. The case was tried to the jury, who returned a verdict for the defendants.  The court denied the plaintiff's motion to set the verdict aside.  The plaintiff has appealed from the judgment.

The cause of action was set out in three counts. In the first count, the plaintiff alleged an assault by Michael Gregory and Marshall Hopkins, police officers.  In the second count, which again alleged that Gregory and Hopkins assaulted and injured her husband, she sought recovery from them and seven other members of the police department, including the chief of police, for negligence in the manner in which her husband had been arrested; in failing to observe his physical condition and to obtain proper medical care; in permitting him to be manhandled; and in the failure of the superior officer to instruct subordinates to handle intoxicated or injured prisoners properly.  The third count was directed against all of the individual defendants and the city. All of the allegations of the second count were incorporated in the third count together with additional allegations by which the plaintiff attempted to hold all of the defendants liable under General Statutes § 7-465, which imposes an indemnitor's liability on the city under certain conditions if the injuries were

caused, without wilfulness or wantonness, by a municipal employee while performing his official duties. *Martyn* v. *Donlin,* 148 Conn. 27, 32, 166 A.2d 856. After the parties rested, the defendants moved for a directed verdict. The court granted the motion as to all of the defendants except Gregory and Hopkins. The case against these two under the first two counts was submitted to the jury, who found for them and by direction for all of the other defendants. The court denied the plaintiff's motion to set aside the verdict. Error has not been assigned in the denial of the motion. Consequently, the error claimed in the direction of the verdict cannot be considered. See Practice Book, 1963, § 605.

The finding of the claims of proof has not been challenged. It recites that the plaintiff offered evidence to prove and claimed to have proved the following: On July 29, 1960, Allard had been drinking. A neighbor, at the plaintiff's request, took him to his room, but he shortly returned to the street. In some unexplained manner, he fell and struck the back of his head on the sidewalk, leaving a blood mark on the sidewalk. He was then carried to his room. Raymond Rubenbauer, a police officer, was called to the scene and found Allard on a couch in his room. He was bleeding from a cut on the back of his head. As the officer turned from Allard to telephone for an ambulance, Allard attacked the officer, who retreated from the room, descended to the street level and called for assistance. Other police officers, Roger Brisson, Robert Miller, Theodore Napper and Vincent Supple, arrived to assist Rubenbauer. As the officers attempted to ascend the stairs to the Allard apartment on the third floor, Allard drove them off by hurling milk bottles down the stairway. To avoid injury from the

breaking glass, the officers retreated to the street, whereupon Allard voluntarily descended and surrendered. He was handcuffed, placed in a patrol wagon in the custody of Marshall Hopkins and Peter Denisky, police officers, and taken to the booking office at the Hartford police station. According to a witness, Joseph Butterfield, who was present in the booking office, Gregory and Hopkins assaulted Allard in the booking office, and Allard was knocked to the floor, striking his head on the floor, and was further shaken about on a bench in the office. Rendered unconscious and in a coma, he was taken to the McCook Hospital and from there to the Hartford Hospital, where despite brain surgery he died from a massive cerebral edema. Hospital records reveal that he had two parallel four-inch scalp lacerations in the occipital area, a fracture of the right occipital bone, a laceration of the left parietal area of the brain about one by one and one-half inches, a one-inch contusion of the right frontal lobe, and subdural and subarachnoid hemorrhage.

The defendants offered evidence to prove and claimed to have proved the following: Allard suffered a fractured skull at the time of his fall on the sidewalk before his arrest. At the booking office, he collapsed while being booked. Attempts to revive him failed, and a physician was called. The physician ordered him hospitalized. The conditions found upon surgery and in the postmortem examination of Allard were consistent with the results which might be expected from a fall on the sidewalk with force great enough to produce a laceration and fractured skull. The defendants also claimed: The plaintiff's case depended solely on the credibility of the witness Butterfield, who admitted on the stand that he had lied in several respects while testifying under oath

before the coroner. Butterfield also admitted that he had, on the witness stand, made a false statement with respect to a document which was shown to him during cross-examination. Evidence concerning his arrest record was originally introduced without objection by the plaintiff. After Butterfield testified that he had been arrested six or seven times, the plaintiff objected to questions concerning Butterfield's police record, and the evidence was then admitted for the limited purpose of showing animus. Thereafter, Butterfield lied on the witness stand concerning the number and nature of his arrests, and for that reason the court permitted the line of inquiry to continue, since it went to the question of what weight the jury would give Butterfield's testimony. Butterfield admitted that he was lying on the witness stand when he testified that he had only been arrested five, six or seven times instead of about twenty. He stated that he had lied about his arrest record in Maine because he thought it would not be checked.

The assignments of error which are properly before us relate exclusively to developments in the trial which were brought about by the testimony of Butterfield, who was the only person, other than police officers, present while Allard was being booked at police headquarters.

On direct examination, Butterfield stated that he was in the booking room because he had been picked up for operating a motor vehicle while his license was under suspension. He then gave his version of the alleged assault by Gregory and Hopkins. On cross-examination, the defendants, in an effort to show animus of the witness, asked if he had not had conflicts with the police over the years, and he replied that he had, limited to five or six motor vehicle

violations. Further cross-examination and the production of a document, which the witness was permitted to examine for the purpose of refreshing his recollection, elicited his admission that the number of arrests was twenty or more and that they were not all for motor vehicle violations. The arrests had occurred in Maine, Massachusetts and Connecticut. The plaintiff excepted to the court's overruling of objections to two questions, put to the witness, which were designed to demonstrate his untruthfulness on the stand. The inquiry into Butterfield's relations with the police was originally allowed for the purpose of showing animus. The plaintiff did not object to such an inquiry. Since, however, the cross-examination disclosed inconsistencies, inaccuracies or untruthfulness in Butterfield's testimony as the subject of animus was developed, the examination progressed to one involving his credibility. The exceptions were taken to questions which affected his credibility. The range of evidence on cross-examination for the purpose of discrediting a witness is very liberal and rests largely in the discretion of the court. *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505; *State* v. *Bello,* 133 Conn. 600, 603, 53 A.2d 381; 3 Wigmore, Evidence (3d Ed.) § 944. The plaintiff has not shown an abuse of discretion in this case.

At the conclusion of Butterfield's testimony, the court excused the jury and, in their absence, adjudged the witness guilty of contempt committed in the presence of the court by giving false testimony. The plaintiff moved for a mistrial on the ground that the action was prejudicial to the plaintiff. The motion was denied. The plaintiff excepted and has assigned error in the ruling. The court has inherent power to impose punishment for a contempt com-

mitted in its presence. *Whiteside* v. *State,* 148 Conn.
77, 78, 167 A.2d 450. We are not, however, review-
ing the adjudication of contempt. The gist of the
plaintiff's argument is that the jury might possi-
bly have noticed Butterfield's absence from the
courtroom during the balance of the trial and have
drawn an unfair inference from it. At the time the
court committed Butterfield, it took special pre-
cautions to prevent information of the action from
reaching the jury and specifically directed that no
publicity of any nature be given to the incident
until the conclusion of the trial. The court also
stated that the witness would be available if addi-
tional evidence by him was needed. No error has
been assigned in the finding that at no time subse-
quent to the commitment was the witness' presence
in court requested or any further claim advanced
that his absence prejudiced the plaintiff, or in the
finding that at no time did the plaintiff claim that
the jury had acquired knowledge of the proceeding.
There is nothing in the record to support the claim of
the plaintiff that she was denied a fair trial by the
incident. *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52
A.2d 433; *State* v. *Leopold,* 110 Conn. 55, 60, 147
A. 118.

The remaining assignment of error to be con-
sidered is directed to a portion of the charge con-
cerning the weight to be given Butterfield's testi-
mony. The charge is tested by the claims of proof
in the finding. *Sears* v. *Curtis,* 147 Conn. 311, 316,
160 A.2d 742. The unchallenged finding with respect
to the admission of Butterfield that he had lied in
several respects while testifying under oath be-
fore the coroner refutes the plaintiff's claim that
the court erred when it told the jury that Butter-
field had made such an admission. In the absence

of a request to charge, there was no error in the failure to charge that the evidence relating to Butterfield's arrest record was limited solely to show hostility. As is apparent from the discussion herein on the evidential rulings, the purpose of the cross-examination broadened as Butterfield wove his web of contradictions. The inadvertent statement of the court in the charge that Butterfield had testified that Gregory and Hopkins had struck Allard after he had slumped at the booking desk does not constitute reversible error. The court correctly instructed the jury that they were the sole judges of the evidence and that if in stating any of the evidence the court was mistaken, the jury were to correct the error. "An inadvertently inaccurate statement extracted from a charge by a process of critical dissection will not be regarded as reversible error unless it is reasonably probable that the jury would have been misled by it." *McMahon* v. *Bryant Electric Co.,* 121 Conn. 397, 406, 185 A. 181; *Borsoi* v. *Sparico,* 141 Conn. 366, 370, 106 A.2d 170.

There is no error.

In this opinion the other judges concurred.