STATE OF CONNECTICUT *v.* CHARLES CRAWFORD

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, JS.

Argued October 14—decision released December 7, 1976

Robert G. Oliver, special public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

Ernest J. Diette, Jr., assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Richard P. Sperandeo,* chief assistant state's attorney, for the appellee (state).

BARBER, J. Following a jury trial, the defendant was found guilty of murder. He was sentenced to be imprisoned, and this appeal is taken from the judgment of the court. On appeal the defendant claimed that the court erred in its charge to the jury and that certain statutes violated due process. In his brief, however, he has pursued only the issue of

the claimed erroneous jury charge. Any claim of error which is not briefed is considered abandoned. *State* v. *Ruiz,* 171 Conn. 264, 265, 368 A.2d 222.

The facts of the homicide were not in substantial dispute. At approximately 11:45 p.m. on December 28, 1973, James Frosolone and his friend, Barbara Musco, left the Starlite Lounge in Hamden. The defendant, Charles Crawford, approached Frosolone from behind and shot him seven times with a .22 caliber revolver, twice in the head and five times in the back. Several of the shots were fired into the victim after he had fallen to the sidewalk. Immediately thereafter, the defendant, in the company of a friend, Robert Pascale, ran into the woods across the street and eventually fled to the state of Florida where he was subsequently arrested.

At the trial, the defendant did not contest the fact that he had killed Frosolone but based his defense on a claim that his voluntary intoxication from alcohol and drug intake prior to the shooting resulted in his incapacity to form the requisite intent necessary for a conviction of murder. The defendant took the stand in his own behalf and testified that he had consumed a great deal of alcohol and a tablet of LSD (lysergic acid diethylamide) which were producing feelings of paranoia by the time he reached the Starlite Lounge. He then testified that he continued consuming alcoholic drinks during the course of the evening and that he felt that he was increasingly under the influence of the LSD drug. The defendant claimed that he could not remember obtaining or possessing a gun that night nor could he recall shooting Frosolone, although he did remember events leading up to and following the shooting. No medical evidence was presented by the defense.

The state offered evidence from which the jury could reasonably have concluded the following: The defendant acted, moved, and spoke in an apparently natural, normal manner during the course of the evening at the Starlite Lounge. He danced and conversed with various people to whom he did not appear intoxicated. He and his friend Pascale were involved in an altercation with another young man named Joey. Joey and Pascale were asked to leave the lounge and the defendant left with them. Later, the defendant and Pascale were part of a group arguing in the parking lot which was dispersed by Starlite Lounge's security guard. The victim, Frosolone, was head of a New Haven gang calling itself W. Sava. Although Frosolone was involved in no arguments on the night of the shooting, his gang had previously fought with a group from Hamden. Robert Foley, with whose family the defendant was living, testified as a witness for the state that on the night of the shooting at about 10:45 or 11 p.m., the defendant had returned to the Foley home, told Foley that somebody had threatened him and that he needed his gun, which he took from behind the stereo in Foley's room. The defendant told Foley that he and Pascale had some trouble with some youths from Grand Avenue in New Haven. He then left the Foley home and did not return until about 12:30 a.m. when he told Foley that he, Crawford, had shot "somebody from Grand Avenue." Foley saw the defendant change his clothes and then heard the defendant tell Pascale on the telephone that he wanted to leave Connecticut. The defendant eventually ended up in Florida where he was apprehended.

The only error claimed and pursued by the defendant on appeal is the alleged inadequacy of

the trial court's charge to the jury relating to the burden of proof on the effect of voluntary intoxication. The defendant did not request a charge nor take any exception to any portion of the charge as delivered by the trial court. On appeal, appellate counsel has raised this issue for the first time. This court will not consider claimed errors on the part of the trial court unless it appears that the question was distinctly raised at the trial and was ruled upon and decided adversely to the appellant's claim. Practice Book § 652; see *State* v. *Simms,* 170 Conn. 206, 208, 365 A2d 821; *Gelinas* v. *Nelson,* 165 Conn. 33, 40, 327 A.2d 565.

In two exceptional circumstances, however, this court will consider newly raised claims. "The first is . . . where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. . . . The second 'exceptional circumstance' may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576. The defendant's counsel claims that the trial judge's inadequate charge had the effect of shifting to the defendant the burden of persuading the jury that he was so intoxicated as to be incapable of forming the requisite intent for murder, thereby effectively requiring him to prove an element of intent. The United States Supreme Court, in a decision rendered after the defendant's trial, held that such a burden of proof imposed by the state on a defendant did not comport with the due process requirement as defined in *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368, that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *Mullaney*

v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d
508. Although there is some doubt that the "excep-
tional circumstances" doctrine recognized in *State*
v. *Evans,* supra, is applicable to the defendant's
claim of error in this case, we consider the single
issue which is dispositive of this appeal.

The portions of the charge to the jury pertaining
to the issue of intoxication and its relationship to
the specific intent required for murder amounted to
an unexceptionable statement of the relevant Con-
necticut law. It is a well-established rule that the
charge to the jury must be read as a whole and
that individual instructions are not to be judged in
"artificial isolation" from the overall charge. *Cupp*
v. *Naughten,* 414 U.S. 141, 147, 94 S. Ct. 396, 38
L. Ed. 2d 368; *State* v. *Ralls,* 167 Conn. 408, 422,
356 A.2d 147; *Penna* v. *Esposito,* 154 Conn. 212, 215,
224 A.2d 536. Under our penal code, murder is
defined as causing the death of another person with
intent to cause the death of that person or a third
person. General Statutes § 53a-54a (a). It was
undisputed that the defendant caused Frosolone's
death. Intoxication is not a defense to a criminal
charge but evidence of intoxication may be offered
by the defendant whenever relevant to negate an
element of the crime charged. General Statutes
§ 53a-7. As used in this section, "intoxication"
means a substantial disturbance of mental or physi-
cal capacities resulting from the introduction of
substances into the body. Ibid. In this case, the
defendant offered testimony regarding his intoxica-
tion to negate the essential element of specific intent
in his prosecution for murder. Throughout the trial,
however, the burden remained with the state to per-
suade the jury beyond a reasonable doubt that the
defendant, in spite of any intoxication, had the

capacity to, and did, form the intent to cause Frosolone's death when he shot him. This was in accordance with the duty of the state to prove beyond a reasonable doubt all the elements of a charged crime, including intent. See *In re Winship,* supra; *State* v. *Brown,* 163 Conn. 52, 64, 301 A.2d 547; *State* v. *Benson,* 153 Conn. 209, 215, 214 A.2d 903. The instructions to the jury, properly read as a whole, correctly and adequately informed the jury of all the relevant law. See *State* v. *Dortch,* 139 Conn. 317, 93 A.2d 490. In particular, the court specifically charged the jury that the defendant had no burden of proof at all and that the state had the burden of proving that the defendant was capable of forming the required intent. Thus there was neither an erroneous charge nor even a reasonable possibility that the jury were misled. See *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077.

The United States Supreme Court decision in *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508, is inapplicable to the case before us. In *Mullaney,* the court considered a Maine law affirmatively shifting the burden of proof to the defendant by requiring him to prove the critical fact in dispute. Under the Maine law, a defendant was specifically required to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. *Mullaney* v. *Wilbur,* supra, 703. As we have already stated, neither Connecticut law nor the charge to the jury in the present case placed the burden on the defendant with respect to proving his capacity, or lack thereof, for having an intent to cause Frosolone's death when he shot him. Intoxication is neither a defense nor an affirmative defense to a murder charge under Connecticut law.

The jury charge and the statutory treatment of intoxication as it relates to specific intent do not fall within the *Mullaney* prohibition. The defendant's claim that the effect of the charge to the jury was to make the issue of the defendant's intoxication analogous to an affirmative defense and to shift the burden of proof on the issue of intent to the defendant is without merit.

There is no error.

In this opinion the other judges concurred.