STATE OF CONNECTICUT *v.* CHARLES WILLIAMS

STATE OF CONNECTICUT *v.* RODNEY KYLES

STATE OF CONNECTICUT *v.* GREGORY FULTON

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued June 11—decision released August 19, 1980

*Thomas Corradino,* for the appellant (defendant Williams).

*Frank Antollino,* for the appellant (defendant Kyles).

*Joette K. Rubin,* assistant public defender, with whom was *Suzanne Zitser,* assistant public defender, for the appellant (defendant Fulton).

*William F. Gallagher,* special assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Michael Dearington,* assistant state's attorney, for the appellee (state).

BOGDANSKI, J. Gregory Fulton, Rodney Kyles and Charles Williams were charged in separate informations with conspiracy to commit robbery in the first degree in violation of § 53a-48 of the General Statutes[1] and with robbery in the first degree in violation of § 53a-134 (a) (2) of the General Statutes.[2] The three defendants were tried together. Fulton and Kyles were found guilty of conspiracy to commit first degree robbery and of first degree robbery.[3] Williams was found guilty of conspiracy to commit robbery in the second degree and of rob-

---

[1] Section 53a-48 of the General Statutes provides in pertinent part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] Section 53a-134 of the General Statutes provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon."

[3] Kyles was also charged and convicted of carrying a revolver without a permit in violation of § 29-35 of the General Statutes. The claimed error, if any, as to this count, however, has not been pursued and is therefore considered abandoned.

bery in the second degree. On appeal[4] all three defendants claim that the court erred in its charge to the jury. We find this claim to be dispositive.

Only a brief statement of the facts is necessary for the purposes of this appeal. Shortly after nine o'clock on the evening of January 23, 1977, Edward Funaro, after closing Visel Drugstore on Dixwell Avenue in New Haven, walked towards his car carrying a metal cash box which contained approximately $10,000 in cash and $2400 in checks. As he was proceeding to the car, he was distracted by a noise, turned to look, and saw a figure pointing something at him. He then heard a squirting noise and felt something liquid hit him. He was thereafter attacked and struck on the head, went limp, and the cash box was snatched from him. He later described the blow as being inflicted by something "harder than a fist" but he did not know what the object was. The blow caused a gash which required seven stiches to close.

Immediately after being attacked Funaro got up from the ground and yelled to Michael Pacelli, a fellow employee who had left the store with him and who had headed towards his own car parked some distance away. In response Pacelli ran in the

---

[4] All three defendants have also briefed issues concerning the state's comments on an adverse inference, the admission into evidence of a gun and a can of Halt, and fourth amendment claims regarding their arrests and the seizure of evidence. Kyles and Williams have also raised a *Bruton* issue; *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968); concerning an incriminating statement made by Fulton to the police. Williams and Fulton have raised a double jeopardy issue and Fulton has raised a *Wharton* rule issue; see *Iannelli* v. *United States*, 420 U.S. 770, 773, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975); concerning his conviction on the conspiracy count. Because of our disposition of this case we need not consider any of these issues with the exception of the one relating to the admissibility of the gun.

direction in which the assailants were fleeing. A short distance away he noticed a parked car with one person in the driver's seat, and another person hurriedly getting into the car. Pacelli noted the color, make, and license number of the car as it left the scene.

A short time later, a car matching the one Pacelli described was found by the police. It was locked, its hood was warm, and the ignition lock appeared not to have been tampered with. The police then went to the nearby apartment of the registered owner of the car where they arrested the defendants. They found the metal cash box containing checks made out to Visel's Drugstore in a bedroom and a .38 caliber gun in the defendant Kyle's possession.

At the conclusion of the trial, the court instructed the jury that if they found any one of the defendants guilty of a certain degree of robbery they would have to find him guilty not only of conspiracy but of the same degree of conspiracy.[5]

---

[5] "In other words, ladies and gentlemen of the jury panel, if you decide that any one of the accused are guilty of committing robbery in the first degree, you would also find them guilty of conspiracy to commit robbery in the first degree. If you find that they would be guilty of robbery in the second degree, you would find that they would be guilty of a conspiracy to commit robbery in the second degree. And, that would also apply to robbery in the third degree.

"But, let's not lose sight of the fact that you may, in your own good will, find the defendants not guilty of any crime.

"In other words, what I am saying to you is that you cannot find anybody guilty of a robbery and not guilty of a conspiracy. You cannot find a conspiracy without a robbery. . . .

"Now, as I explained to you, if you do not find that a robbery is committed in the first degree, you cannot find a conspiracy to commit that robbery in the first degree. If you find that a robbery in the first degree was committed and that the accused are guilty as charged, they will also be guilty of the charge of conspiracy to

The court attempted to correct that portion of the charge by subsequently instructing the jury that they could convict on the charge of robbery while acquitting on the conspiracy charge and vice versa.[6] The court did not, however, instruct the jury that if they did find any of the defendants guilty of a robbery and a conspiracy that they did not have to find him guilty of the two crimes in the same degree. That is, the court failed to instruct the jury that the degree to which any defendant was guilty of the substantive crime of robbery and the substantive crime of conspiracy to commit robbery must be independently determined. None of the defendants took exception to this portion of the charge.

commit robbery in the first degree. But, you cannot find a conspiracy to commit robbery in the first degree and a not guilty on robbery in the first degree. I hope you understand that.

"Now, if you find them not guilty of these charges in the first degree, then, as I explained to you, lesser included offenses of robbery in the second degree and conspiracy to commit robbery in the second degree must be considered. . . .

"Perhaps by way of example, I might say to you this that should you decide that the defendants are guilty of say robbery in the third degree, you find him guilty of robbery in the third degree and conspiracy to commit robbery in the third degree, you would not have to consider larceny at all as far as the specific charge of larceny by possession—I'm sorry, maybe I might have missed that. I guess I didn't."

[6] "I think I also told you that in trying to straighten out in your minds, and in mine, what your findings could be as a result of the guilt or innocence of these charges, perhaps I might not have explained it to you sufficiently. I would like to point out to you that you may find the accused, individually or collectively, or I shouldn't say collectively, but individually guilty of the charge of conspiracy and robbery, but you may find him guilty of the charge of robbery but not conspiracy. I hope I have that straight. It could be either or. It could be either finding them guilty of conspiracy, not guilty of robbery; finding of guilty on robbery and not guilty on conspiracy. I hope you understand it could be either or. Certainly a finding of not guilty of any of the charges."

Only exceptional circumstances will save a claim, constitutional or otherwise, from the consequences of a defendant's failure to make a timely objection. *State* v. *Briggs,* 179 Conn. 328, 332, 426 A.2d 298, cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980); *State* v. *Rogers,* 177 Conn. 379, 418 A.2d 50 (1979); *State* v. *Adams,* 176 Conn. 138, 406 A.2d 1 (1978); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The policy behind this rule "does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal." *State* v. *Taylor,* 153 Conn. 72, 86, 214 A.2d 362, cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966); *State* v. *Evans,* supra, 66; *State* v. *Tuller,* 34 Conn. 280, 295 (1867).

Where, however, the record adequately supports a claim that the defendant has been deprived of a fundamental constitutional right and a fair trial, this court will review the claimed error. *State* v. *Evans,* supra, 70.

Thus, despite the defendants' failure to raise this issue below we address it because of the claim that the challenged portion of the charge misled the jury thereby depriving the defendants of their right to a fair trial; *State* v. *Rose,* 169 Conn. 683, 688, 363 A.2d 1077 (1975); and review may be made upon the record. *State* v. *Chesney,* 166 Conn. 630, 353 A.2d 783 (1974); *State* v. *Evans,* supra.

To determine whether an error in a charge constitutes reversible error, the court must consider

the whole charge. *Cupp* v. *Naughten,* 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Piskorski,* 177 Conn. 677, 746, 419 A.2d 866 (1979); *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Crawford,* 172 Conn. 65, 69, 372 A.2d 154 (1976); *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147 (1974). In appeals not involving a constitutional question the court must determine whether it is reasonably probable that the jury were misled; *State* v. *Ralls,* supra; *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); *Penna* v. *Esposito,* 154 Conn. 212, 215, 224 A.2d 536 (1966); *Allard* v. *Hartford,* 151 Conn. 284, 292, 197 A.2d 69 (1964); and, in appeals involving a constitutional question, whether it is reasonably possible that the jury were misled. *State* v. *Annunziato,* 169 Conn. 517, 532, 363 A.2d 1011 (1975); see also *Gilbert* v. *California,* 388 U.S. 263, 268, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1966); *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967).

On the other hand, "[a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statements but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case; *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 [1933]." *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977). The charge should be examined to see whether it fairly presents the case to the jury so that no injustice is done under the rules of law to the legal rights of the defendant. *Farlow* v. *Connecticut Co.,* 147 Conn. 644, 648, 166 A.2d 202 (1960); *Pratt, Read & Co.* v. *New York,*

*N. H. & H. R. Co.,* 102 Conn. 735, 741, 130 A. 102 (1925). Moreover, "the charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." *State* v. *Bell,* 153 Conn. 540, 544, 219 A.2d 218 (1966). The issue, then, is not whether the verdict is supported by the evidence; rather it is whether the jury were misled by the charge. *State* v. *Rose,* supra, 689.

Viewing the charge as a whole, as we must; *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 570, 316 A.2d 394 (1972); *State* v. *Tropiano,* supra, 433; we are compelled to conclude that the jury were left with the impression that if they found the defendants guilty of robbery in the first degree and they found them guilty of conspiracy, they would have to find them guilty of conspiracy to commit robbery in the first degree. Similarly, if they found the defendants guilty of robbery in the second degree and they found them guilty of conspiracy, they would have to find them guilty of conspiracy to commit robbery in the second degree.

We conclude that the court's charge did not meet the requirement that "[t]he instructions to the jury . . . be accurate in law, adapted to the issues and adequate to guide the jury in reaching a correct verdict." *Berniere* v. *Kripps,* 157 Conn. 356, 358, 254 A.2d 496 (1969); *State* v. *Crowe,* 174 Conn. 129, 134–35, 384 A.2d 340 (1977).

One other matter merits consideration: as already noted, § 53a-134 (a) (2) requires proof that a defendant or another participant in the crime was armed with a deadly weapon. Our examination of the record reveals that there was no evidence what-

soever offered to show that a deadly weapon was used in the commission of the robbery. The court therefore erred in admitting the gun into evidence.

We have also examined the constitutional claims of each defendant that the trial court erred in denying each defendant's respective motion to dismiss and suppress and conclude that the court did not err in its denial of the motions.

Because of the necessity of a new trial, the remaining issues briefed by the defendants do not require discussion.

There is error in the three appeals, the judgments are set aside except as to the third count of the Kyles' judgment, and a new trial is ordered.

In this opinion COTTER, C. J., PETERS and HEALEY, Js., concurred.

PARSKEY, J. (concurring). I agree that the court's instructions on conspiracy to commit robbery were in error and that a new trial is required. I cannot agree, however, that "there was no evidence whatsoever offered to show that a deadly weapon was used in the commission of the robbery" and that the court erred in admitting the gun into evidence.

Section 53a-3 (6) of the General Statutes defines the term "deadly weapon" as used in § 53a-134 (a) (2) as follows: " 'Deadly weapon' means any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, *bludgeon* or metal knuckles. . . ." (Emphasis added.) The victim testified that after he had closed the store and walked to his car with the cash box, he heard a distracting noise, turned to look, and saw a figure

pointing something at him. He then heard a squirting noise and felt a hot liquid spray which he did not think was water. He did not know how many people were in the shadow but he knew it was more than one. As he ducked from the liquid, he was hit and felt punches, he was hit over the head, and went limp as the cash box was pulled away from him. He did not know what the object was which hit him over the head, but he knew that it was harder than a fist, and the blow produced a gash which required seven stitches to close. Evidence of a blow to the head of this magnitude, which causes a person to "go limp" and inflicts a gash requiring seven stitches to close, certainly constitutes evidence that at least one of the participants in the crime was armed with a deadly weapon.

For precisely this reason, it would appear, none of the defendants has challenged his conviction on these grounds. Instead they attack the trial court's admission of the gun on the grounds that the gun found in Kyles' coat pocket between twenty and twenty-five minutes after the commission of the crime, while he was still wearing his coat, was not sufficiently connected by other evidence to that crime. If we decide the issue raised under the cases briefed, which in my opinion constitute controlling precedent for this case, then the gun was properly admitted because: (1) it tended to establish a fact in issue, whether a deadly weapon was used, and (2) it tended to corroborate other direct evidence in the case, the victim's testimony regarding the manner in which he was attacked when his money was taken. *State* v. *Acklin*, 171 Conn. 105, 114, 368 A.2d 212 (1976). There we said: " 'Evidence as to articles found in the possession of an accused person subsequent to the time of the commission of

a crime for which he is being tried is admissible only if it tends to establish a fact in issue or to corroborate other direct evidence in the case; otherwise the law does not sanction the admission of evidence that the defendant possessed even instruments or articles adapted to the commission of other crimes. . . . The reason is analogous to that applicable to evidence of other crimes committed by a defendant but unrelated to the offense under investigation.' *State* v. *Groos,* 110 Conn. 403, 407, 148 A. 350; see *State* v. *Brown,* 169 Conn. 692, 364 A.2d 186, and cases and authority therein cited; 22A C.J.S., Criminal Law, § 712 (c).'' In my view, the issue should be determined on the grounds raised and decided on well-established precedents of this jurisdiction which lead to the conclusion that the court's decision to admit the gun was not in error.