STATE OF CONNECTICUT *v.* WILBERT CANNON

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued June 9—decision released August 11, 1981

*Thomas Corradino,* for the appellant (defendant).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. After a trial to a jury, the defendant was found guilty of robbery in the first degree in violation of General Statutes

§ 53a-134 (a) (3).[1] The defendant has appealed from the judgment rendered on the verdict and claims error in two respects. He contends (1) that the court erred in refusing to instruct the jury on the lesser included offense of larceny in the third degree; General Statutes § 53a-124;[2] and (2) that

[1] General Statutes § 53a-134 (a) (3) provides: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

Robbery is defined in General Statutes § 53a-133 as follows: "ROBBERY DEFINED. A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[2] General Statutes § 53a-124 provides: "LARCENY IN THE THIRD DEGREE: CLASS B MISDEMEANOR. (a) A person is guilty of larceny in the third degree when: (1) The value of the property or service exceeds fifty dollars; or (2) the property consists of a public record, writing or instrument kept, held or deposited according to law with or in the keeping of any public office or public servant; or (3) the property consists of a sample, culture, microorganism, specimen, record, recording, document, drawing or any other article, material, device or substance which constitutes, represents, evidences, reflects, or records a secret scientific or technical process, invention or formula or any phase or part thereof. A process, invention or formula is 'secret' when it is not, and is not intended to be, available to anyone other than the owner thereof or selected persons having access thereto for limited purposes with his consent, and when it accords or may accord the owner an advantage over competitors or other persons who do not have knowledge or the benefit thereof.

"(b) Larceny in the third degree is a class B misdemeanor."

Larceny is defined in General Statutes § 53a-119 as follows: "LARCENY DEFINED. A person commits larceny when, with intent to deprive

the instructions to the jury were misleading and confusing on the issue of whether the defendant was an aider and abettor under General Statutes § 53a-8.[3]

The jury could reasonably have found the following facts: Stephen Wabunoha, a Ugandan refugee, came to this country with his wife and children on December 18, 1977. He and his family moved into an apartment in New Haven after Christmas, 1977.

On January 31, 1978, at approximately 8 p.m., Wabunoha walked from his apartment to a nearby store to buy some milk for his family. Finding the store closed, he stopped in a bar to have a drink; he had recently learned of the death of his father. He had been speaking with two men in the bar when Donald Mack entered and greeted Wabunoha. Mack, at an earlier date, had introduced himself to Wabunoha and had previously asked Wabunoha for money. Wabunoha, at one time, had given him fifty cents. On the present occasion, Mack again asked Wabunoha for money. After Wabunoha gave him fifty cents, Mack left the bar.

At approximately 9 p.m., Wabunoha left the bar and again encountered Mack. Mack invited Wabunoha to meet his "cousin" who lived on Hallock Street. When they arrived at an apartment at 31 Hallock Street, Wabunoha and Mack were let in by the defendant, who was then introduced

another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner . . . ."

[3] General Statutes § 53a-8 provides: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

to Wabunoha. The defendant returned to a couch in the living room where he had been lying while Mack and Wabunoha entered the kitchen. The kitchen was approximately fifteen to twenty feet from the couch.

Prior to entering the apartment, Mack had told Wabunoha to place his watch in the pocket of his overcoat. Once in the kitchen, Wabunoha removed his coat and placed it over a chair. Mack left the kitchen and traveled from the living room into the bedroom and back to the kitchen a number of times before he left the apartment to retrieve a glove which Wabunoha said that he had dropped on the stairway leading to the apartment. Upon returning, Mack left the kitchen for the last time before returning with a drawn knife demanding Wabunoha's watch and money.

Mack approached Wabunoha with the knife in his right hand, blade extended, and brought the blade to within a foot of Wabunoha's neck. Wabunoha became very upset and started yelling and screaming. The defendant then entered the kitchen from the living room and joined Mack in demanding Wabunoha's watch and wallet.[4]

---

[4] After indicating that Mack had approached him in the kitchen with the knife, with the blade open, Wabunoha was asked the following question and gave the following response:

"Q. Now, Mr. Wabunoha, did Mr. Mack say anything at that time?

"A. Yes, he comes to me and he says, 'Bring your watch and your wallet and I go,' I said, 'What's happening? I thought you were my friend.' He said, 'Bring your watch and your wallet.' Then Cannon comes from the couch he was sleeping on and he says, 'Yes, bring your watch and your wallet. Bring it quick, come on.' I rose from the chair and I said, 'What's happening? I don't understand you people. I thought you were my friends.' Then Mack reached— I had the wallet in my back pocket and Mack reaches for the wallet and gets the wallet and opens it. It has a zipper on it. He opens it and finds $45. That's the money I had, because I had $60 and I spent fifteen and I had forty-five left."

The defendant held Wabunoha's hand while Mack removed Wabunoha's wallet from his rear pants pocket. The defendant and Mack both demanded to know why Wabunoha had not admitted that he had money in his wallet. Mack then took the watch from Wabunoha's outercoat pocket.

Wabunoha became hysterical and begged Mack and the defendant not to kill him. The defendant ordered Wabunoha to leave but Wabunoha refused because he feared that the defendant and Mack would follow and kill him. The defendant helped Wabunoha to his feet and gave him a drink of gin to calm him down.

After approximately three hours of pleading with Mack and the defendant for the return of his property, Wabunoha was walked outside by the two and in the direction of Wabunoha's apartment because Wabunoha was not familiar with the streets. The defendant returned Wabunoha's wallet but it did not contain the forty-five dollars that Wabunoha had in it.

At trial, the jury were instructed on the elements of robbery in the first,[5] second[6] and third degrees,[7] and on aiding and abetting of a robbery.[8] The

[5] See footnote 1, supra.

[6] General Statutes § 53a-135 provides: "ROBBERY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present; or (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

[7] General Statutes § 53a-136 provides: "ROBBERY IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of robbery in the third degree when he commits robbery. (b) Robbery in the third degree is a class D felony."

[8] See footnote 3, supra.

defendant's first claim of error relates to the trial court's failure to instruct the jury on larceny in the third degree as a lesser included offense of robbery in the first degree. Specifically, the defendant claims that all four elements of the test we enunciated in *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), which was made more precise in *State* v. *Tinsley,* 181 Conn. 388, 397n, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981), were satisfied, thus entitling him to an instruction on larceny in the third degree.[9]

---

[9] At the time that defendant's counsel filed his "Statement of Issues" (i.e., his preliminary statement of issues), he did not include any claim that the trial court erred in failing to instruct the jury on the lesser included offense of larceny in the third degree. He did, however, preface his "Statement of Issues" in part by the following statement: "Counsel does not preclude the possibility that other issues may be raised upon examination of the transcript."

Section 3012 of our rules provides: "The appellant shall submit . . . to the chief clerk of the supreme court at the time a copy of the appeal is sent: (a) A preliminary statement of the issues intended for presentation on appeal. . . ." Practice Book § 3012. This rule also provides: "Except as otherwise provided, a party may as of right file amendments to the above documents at any time until that party's brief is filed, and thereafter only by leave of the supreme court. If leave to file an amendment is granted, the adverse party shall have the right to move for permission to file a supplemental brief and for a continuance. Amendments shall be filed in the manner provided in Secs. 3096 to 3102, inclusive, with respect to the filing of motions and shall be distributed to the judges of the supreme court as provided in Sec. 3086, or shall be included in the printed record."

The defendant has thoroughly briefed his claim that the trial court erred in failing to instruct the jury on the lesser included offense of larceny in the third degree. The state has done likewise. Our examination of the record, however, does not disclose that defendant's counsel ever filed, as was his right before his brief was filed or by way of permission of this court after his brief was filed, any amendment to his statement of issues raising this claim. Even though the state raised no objection we point out that § 3012(d) provides: "Failure to comply with this section shall be deemed a

A defendant is entitled to an instruction on a lesser offense only if each of the following four conditions are met: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) the evidence, introduced by either the state or the defendant, or by a combination of their proofs, justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Kolinsky,* 182 Conn. 533, 544, 438 A.2d 733 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1981), quoting *State* v. *Tinsley,* supra, 396–97; *State* v. *Morin,* 180 Conn. 599, 601, 430 A.2d 1297 (1980); *State* v. *Whistnant,* supra; see *State* v. *Smith,* 185 Conn. 63, 77, 441 A.2d 84 (1981). A refusal to charge will be justified if any of the four conditions is not satisfied. *State* v. *Kolinsky,* supra; *State* v. *Whistnant,* supra, 588.

Under the second prong of *Whistnant,* the defendant would be entitled to a charge on larceny in the third degree if it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. *State* v. *Tinsley,* supra; *State* v. *Whistnant,* supra, 588. The information charged that "Wilbert Cannon and Donald

sufficient reason to schedule a case for dismissal under Sec. 3109." We have refused to consider an issue that was not included in the preliminary statement of issues, as required by our rules. See *Presutti* v. *Presutti,* 181 Conn. 622, 626, 436 A.2d 299 (1980). We will, however, in the interests of justice, consider this claim.

Mack, another participant in the crime, did commit a robbery of Stephen Wabunoha and in the course of the commission of the crime Donald Mack used and threatened the use of a dangerous instrument, to wit: a knife, in violation of Section 53a-134 (a) (3) of the General Statutes." The defendant, as was his right, did not move for a bill of particulars. See Practice Book §§ 830 through 833.

The second prong of *Whistnant* has not been satisfied in this case because it is possible to commit the greater offense in the manner described in the information, without having first committed the lesser. This is so because General Statutes § 53a-124[10] provides in relevant part that "(a) A person is guilty of larceny in the third degree when: (1) The value of the property or service exceeds fifty dollars . . . ." Clearly, the lesser offense of larceny in the third degree requires proof of an element, i.e., value of the property taken to exceed fifty dollars, which robbery in the first degree does not. Thus, this precludes our finding here that larceny in the third degree is a lesser included offense of robbery in the first degree.[11]

The defendant's second claim of error rests on the trial court's instructions to the jury regarding the defendant's status as an aider and abettor under

---

[10] See footnote 2, supra.

[11] We note that the defendant has also failed to meet the first prong of *Whistnant*. Although he took an exception to the court's charge as given, this does not meet the requirement, under *Whistnant*, that in order for a defendant to be entitled to an instruction on a lesser offense "an appropriate instruction" must be requested by either the state or the defendant. See *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). ("A defendant is entitled to an instruction on a lesser offense *if, and only if,* the following conditions are met." [Emphasis added.]) No such request to charge was submitted by either the state or the defendant.

General Statutes § 53a-8.[12]  Basically, the defendant argues (1) that the court did not sufficiently relate its aiding and abetting instructions to its robbery instructions, and (2) that the trial court's supplemental instructions on aiding and abetting were delivered in such a manner as to read the requirement of proving criminal intent out of the statute.

The court, at trial, gave a lengthy instruction to the jury, including specific instructions on the elements of robbery in the first, second and third degrees, and an instruction, requested by the defendant, on aiding and abetting.[13]  During their deliberations, the jury requested supplemental instructions on the differences between the crimes of robbery in the first, second and third degrees, and on the need for proof of the defendant's criminal intent.  In addition, the jury twice requested an explanation of the aiding and abetting statute § 53a-8 and once asked for the difference between the crimes of robbery in the first degree and aiding and abetting.  The court duly responded to each inquiry from the jury.  "To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge.  *Cupp* v. *Naughten,* 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Piskorski,* 177 Conn. 677, 746, 419 A.2d 866 (1979); *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Crawford,* 172 Conn. 65, 69, 372 A.2d 154 (1976); *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147 (1974).  In appeals

---

[12] See footnote 3, supra.  The information charged the defendant with robbery in the first degree as a principal and the state claims that the evidence at the trial was sufficient to support the defendant's conviction as a principal.

[13] In oral argument before us the defendant's counsel admits that his request to charge on aiding and abetting, which he says was "liberal," was given by the court.

not involving a constitutional question the court must determine whether it is reasonably probable that the jury were misled; *State* v. *Ralls,* supra; *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); *Penna* v. *Esposito,* 154 Conn. 212, 215, 224 A.2d 536 (1966); *Allard* v. *Hartford,* 151 Conn. 284, 292, 197 A.2d 69 (1964). . . ." *State* v. *Williams,* 182 Conn. 262, 267–68, 438 A.2d 80 (1980).

A charge to the jury will not be critically dissected for the purpose of discovering possible inaccuracies of statements, but the charge is to be considered, rather, as to its probable effect upon the jury in guiding them to a correct verdict in the case. *State* v. *Williams,* supra, 268; *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977). The ultimate test of a court's main and supplemental instructions is whether, taken as a whole; *State* v. *Reed,* 174 Conn. 287, 308, 386 A.2d 243 (1978); they fairly and adequately presented the case to the jury in such a way that injustice is not done to either party under the established rules of law. *State* v. *Tinsley,* supra, 396; *State* v. *Harden,* 175 Conn. 315, 321–22, 398 A.2d 1169 (1978).

The defendant claims that the trial court "made no attempt to connect" the instructions on aiding and abetting with its previous instructions on the various degrees of robbery. He states that, as a result of the manner and sequence in which the instructions were delivered, the jury were confused on the required mental intent needed to be proved in order to be found guilty on aiding and abetting. Additionally, the defendant contends that the jury were also confused as to whether mere presence at the scene of the crime established guilt as an aider

and abettor. The defendant, in his brief, claims that the court's instructions "were confusing and contradictory so that there was both a reasonable probability and possibility that the jury was misled. *State* v. *Williams*, 182 Conn. 262, 268, 438 A.2d 80 (1980)." The defendant attempts to reinforce this "jury confusion" issue by pointing out that the jury twice asked to be reinstructed on the aiding and abetting statute. Upon reviewing both the main and supplemental instructions taken as a whole, we find no merit to the defendant's claims of error.

The record demonstrates that the court, both initially and subsequently, emphasized that mere presence at the scene of the crime does not constitute guilt as an aider and abettor, and that a person is not guilty under the aiding and abetting statute unless he possesses the requisite criminal intent or unlawful purpose.[14] The court also

[14] The court, in its main charge, stated: "This is the aiding and abetting section, Section 53a-8 of our Connecticut statutes. That statute provides, a person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . .

"The words of the statute are, I think, clear, except perhaps as regards the word 'importune'; and there the question is, did he encourage and incite the commission of this crime? To find him guilty, you must, however, decide that he did more than being [sic] inactively present at the commission of the crime, or passively acquiescing in it, or innocently performing certain acts which in fact did aid in the commission of the offense. Unless there was a criminality of intent and an unlawful purpose or purposes in common with the actual perpetrator of the crime, he is not guilty under the statute. Thus, if in this case you should find that one of the defendants did something which really assisted in accomplishing the crime, but in doing it, because of his ignorance of the existence of some material facts, he did not realize that the doing of the act was in aid of the commission of the crime, then the doing of that act would not

directed attention to the fact that the aiding and abetting statute was to be treated separately from the robbery statutes by stating, "aiding and abetting is a separate and distinct statute that is to be used in conjunction with the other sections I read to you." The mere fact that a jury requests reinstruction is not unusual, especially in a situation such as this, where the charge includes a number of sep-

make him guilty of the crime because it was not done with any criminal intent.

"Furthermore, whether a person who is present at the commission of a crime aids or abets its commission is a question of fact, the answer to which depends on the circumstances surrounding his presence and conduct both before the commission of the crime, during the commission of the crime, and after the commission of the crime. In this regard, I should admonish you that the mere fact that a person knew or had reason to believe a crime was being committed or about to be committed and was at or near the place where in fact a crime was committed does not warrant a finding of guilty."

The court also had previously said: "Now, an accomplice must be found to be present and actively aiding or assisting in the crime. Mere presence of an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime, does not constitute such aid within the meaning of the code."

Upon its first reinstruction, the court stated: "You have asked for the aiding and abetting statute, and I have permission to give it to you by both counsel.

"The statute provides, a person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

Upon second reinstruction, the court stated:

"Question 4: 'Please explain the section on aiding and abetting again. Is there a difference in the crimes of robbery one and aiding and abetting? If so, what is it?'

"Well, aiding and abetting is a separate and distinct statute that is to be used in conjunction with the other sections I read to you. I'll read the aiding and abetting.

"A person, acting with the mental state required for the commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which con-

arate and differing degrees of crimes to be considered. We believe that, if anything, these requests demonstrate the jury's conscientiousness and not their confusion.

The second branch of the defendant's claim of error directed to the charge merits little discussion. Here the defendant argues that a portion of the court's charge in effect read out of the statute the requisite of proof of criminal intent.[15] We do not agree.

Initially, the court gave a detailed charge on robbery in the first, second and third degrees, including the required mental states necessary to prove guilt. The court then instructed the jury on aiding and abetting and stated: "To find him guilty, you must,

---

stitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. In other words, if the accused did any of the things specified in the statute he is, in the eyes of the law, just as guilty of the crimes of robbery one, robbery two or robbery three—as related by the Court— the crime charged as though he had directly committed it or directly participated in its commission.

"I'll repeat that section again.

"A person, acting with the mental state required for the commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[15] Here the defendant's brief specifically quotes the following portion of the supplemental charge: "—'if the accused did any of the things specified in the statute, he is, in the eyes of the law just as guilty—as though he had directly committed or directly participated in its commission.' "

The full sentence immediately preceding this portion as well as the first three words of the quoted portion reads as follows: "A person, acting with the mental state required for the commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. In other words . . . ."

however, decide that he did more than being [sic] inactively present at the commission of the crime, or passively acquiescing in it, or innocently performing certain acts which in fact did aid in the commission of the offense. Unless there was a criminality of intent and an unlawful purpose or purposes in common with the actual perpetrator of the crime, he is not guilty under the statute."[16] Upon the jury's request, the court gave a supplemental instruction on each element of robbery and again referred to the requisite mental state. The court also reinstructed the jury on aiding and abetting and, in response to a specific request by the jury, reinstructed on the element of proof of an accomplice's criminal intent.[17] A final instruction was given concerning the aiding and abetting statute and the jury returned its verdict shortly thereafter.

---

[16] See footnote 14, supra.

[17] "Third question: 'What about proof of criminal intent? Do we need to be concerned about Cannon's intent? There was a bit in your reading of 2nd degree robbery, where we were instructed to disregard acquiescence or innocent acts which might have been misinterpreted.'

"I'll do the best I can regarding that particular part if you will bear with me a moment.

"If I understand, it referred to robbery in the second degree. A person is guilty of robbery in the second degree when he commits robbery and is aided by another person actually present in the course of the commission of the crime, or he or another participant in the crime threatens the use of what he represents by his words or conduct to be a deadly weapon or dangerous instrument.

"An accomplice must be found to be present and actively aiding or assisting in the crime. Mere presence of an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime, does not constitute such aid within the meaning of the Code.

"Is that what you mean? I'll read further if you want.

"I find no hand.

"Question 4: 'Please explain the section on aiding and abetting again. Is there a difference in the crimes of robbery one and aiding and abetting? If so, what is it?'

"Well, aiding and abetting is a separate and distinct statute that

In view of the numerous repetitions of the various charges, we believe that the jury were aware of the need to find the requisite criminal intent in order to find the defendant guilty of aiding and abetting under General Statutes § 53a-8.[18] " 'Of necessity, additional instructions given in immediate response to a request are more informal and expressed with less exactness than are studiously prepared formal charges.' *State* v. *Parker,* 114 Conn. 354, 368, 158 A. 797 [1932]." *State* v. *Edwards,* 163 Conn. 527, 536, 316 A.2d 387 (1972). The charge, in its entirety, was correct in law and fairly presented the case to the jury. *State* v. *Reed,* supra, 308; *State* v. *Edwards,* supra, 537.

There is no error.

In this opinion the other judges concurred.

---

is to be used in conjunction with the other sections I read to you. I'll read the aiding and abetting.

"A person, acting with the mental state required for the commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. In other words, if the accused did any of the things specified in the statute he is, in the eyes of the law, just as guilty of the crimes of robbery one, robbery two or robbery three—as related by the Court— the crime charged as though he had directly participated in its commission."

[18] The defendant has relied upon *State* v. *Teart,* 170 Conn. 332, 365 A.2d 1200 (1976), and *State* v. *Enanno,* 96 Conn. 420, 114 A. 386 (1921), as support for his claim that a portion of the charge in effect read out of the statute the requisite of proving criminal intent. This reliance is misplaced. In *Teart,* the trial judge explicitly and erroneously instructed the jury to "treat [the defendant] as having the mental state required for the commission of a crime." *State* v. *Teart,* supra, 335. In *Enanno,* the trial judge, in its instruction on aiding and abetting, failed to define the term "accessory" and also failed to explain what kind of conduct must be proven in order to be an "accessory." In fact, the trial judge did not even quote the aiding and abetting statute or define its essential terms. *State* v. *Enanno,* supra, 425. Neither of these two cases avails the defendant here.