STATE OF CONNECTICUT *v.* STUART B. SMITH ET AL.

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued March 5—decided April 23, 1968

*Charles G. Karanian,* with whom, on the brief, was *Daniel J. Hagearty,* for the appellants (defendants).

*David B. Salzman,* assistant state's attorney, with whom, on the brief, was *George R. Tiernan,* state's attorney, for the appellee (state).

RYAN, J. The defendants, Stuart B. Smith and George H. Lombra, in a trial to the jury, were convicted of breaking and entering a building with intent to commit a crime therein in violation of § 53-76 of the General Statutes. At the trial, each of the defendants was represented by different counsel. In this appeal the same counsel appears for both defendants.

The defendants' first four assignments of error are addressed to paragraphs of the finding, each of which they claim was found without evidence. There was ample evidence to support these findings, and the claim is without merit.

Both defendants assign error in the denial of their motions for directed verdicts of acquittal which were made at the conclusion of the evidence. From the evidence presented the jury could have found the following facts: On February 17, 1966, at about 1:20 a.m. a state trooper stationed in the town of Middlefield observed a 1959 Ford car, with a white top and a pale pinkish-red bottom, turn south on route 147. The left rear taillight of the car was pinkish-white rather than red and had no lens in it. On the same morning at 2:20 a.m., another state trooper saw this same car traveling south on route

17 in the town of Durham. He obtained the registration number and observed that one of the two occupants was the defendant Stuart B. Smith. With another trooper, he began checking commercial buildings westerly along route 80. Upon their arriving at the Totoket shopping center in North Branford, a burglar alarm began to ring. On investigation they found that the door to Judd's package store had various marks on it. There was an indentation on the doorknob about one-half inch wide, and the wood around the knob was dug out where something had been stuck into the wood. These marks were about one-half inch wide. The rear door to Dee's department store which opens inward had been forced open, and the lock had been broken off. On the inside of the door, a metal plate, part of the locking device, had been torn away with the wood. The marks on the door were the same as those on the door of Judd's package store. These marks were caused by a pry bar, such as a tire iron, or a lug wrench, which the state offered in evidence. While the police officers were at the scene, the same car which had been observed earlier drove into the shopping center and stopped. The operator opened the car door and, upon seeing one of the troopers, got back in the car and drove off at a high rate of speed. The troopers pursued the car, stopped it and apprehended the driver, the defendant George H. Lombra. The car was owned by Smith's wife. On further investigation it was established that there was one set of footprints leading up to Judd's package store and from there to the back door of Dee's department store. The prints then led across the parking lot and up a path which was alongside the river to the bed of an abandoned trolley line. The old trolley line led to the intersection of routes 80

and 100, a distance of 3.5 miles. From this intersection it is approximately 3.8 miles to the overhead bridge of the Connecticut Turnpike on route 100. Smith was apprehended on route 100 in the vicinity of this bridge at 5:31 a.m. on February 17. It required about 150 minutes to walk the 7.3 miles from Dee's department store to the bridge. The burglar alarm went off at 2:49 a.m. A print made by Smith's right shoe was found 351 feet from Dee's department store, and the tire iron which was in evidence was located two days later a short distance from this print. The tire iron had scratches on it and fitted the indentations on the door knobs and the marks on the doors of Judd's and Dee's stores. There was evidence that the tire iron caused these marks. A search of the Smith car revealed that there was a jack in the car but no tire iron. The tire iron offered in evidence fitted the lug nuts on the Smith car.

From these facts the jury were entitled to infer that the tire iron came from the Smith car and that it was used by Smith to force open the door in the department store. So far as Lombra is concerned, his statement that he dropped Smith off at the shopping center and came back one-half hour later to pick him up, while inadmissible as against Smith, definitely involved Lombra.

Since there was no evidence that anything had been taken from Dee's store, the defendants urge that the state failed to prove that an entry had actually been made. From the facts that the door opened inward, the lock had been broken off, a plate on the inside of the door which was part of the locking device was torn loose, the wires of the burglar alarm on the inside of the door and door frame were broken or disconnected, and the door was open, the

jury could infer that some part of Smith's body must have entered the building. "Any penetration, however slight, of the space within the . . . [building] by the defendant, or by any part of his body . . . is a sufficient entry. Accordingly, it is a sufficient entry when the defendant reaches his finger, hand, or arm inside the . . . [building]." 2 Wharton, Criminal Law and Procedure § 421.

Although the state's case rested on circumstantial evidence, it does not follow from that, however, that it was not a strong case. "The law recognizes no distinction between circumstantial evidence and direct evidence so far as probative force is concerned. If evidence, whether direct or circumstantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction. *State* v. *Colonese,* 108 Conn. 454, 460, 143 A. 561; *State* v. *Rome,* 64 Conn. 329, 334, 30 A. 57. As has been said so often, proof beyond a reasonable doubt is such proof as precludes every reasonable hypothesis except that which it tends to support and is consistent with the defendant's guilt and inconsistent with any other rational conclusion. The requirement that evidence must be such as satisfies beyond a reasonable doubt 'does not mean that the proof must be beyond a possible doubt, and a possible supposition of innocence is a far different thing from a reasonable hypothesis.' *State* v. *McDonough,* 129 Conn. 483, 485, 29 A.2d 582; *State* v. *Santoro,* 128 Conn. 297, 299, 22 A.2d 793; *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 A. 761; *State* v. *Block,* 87 Conn. 573, 577, 89 A. 167." *State* v. *Smith,* 138 Conn. 196, 200, 82 A.2d 816. There was ample evidence to support the conclusion of the jury that both defendants were guilty beyond a reasonable doubt. The court's action

in refusing to direct a verdict of acquittal of the defendants was correct.

Smith assigns error in the admission into evidence of certain statements made by Lombra to police officers. These statements were objected to on three occasions by Smith on the ground that they were hearsay and inadmissible as to him. Each of the objections was overruled by the trial court, and an exception duly taken by Smith. Each time this occurred, the trial court carefully instructed the jury that any statement made by Lombra was to be applied only to Lombra as to his alleged part in the commission of the crime and that it was in no way applicable to Smith. Later, in its charge to the jury, the court gave them instructions to the same effect. "[I]t is essential to any orderly trial that the jury be presumed, in the absence of a clear indication to the contrary, to have followed the instructions of the court as to the law, including any limitations on the use of evidence which has been properly admitted for a limited purpose." *State* v. *Hunt,* 154 Conn. 517, 523, 227 A.2d 69. There is nothing to indicate that the jury failed to follow the instructions of the court, and Smith's claim of prejudice finds no support in the record. The ruling of the trial court was correct.

The defendants assign error in the ruling of the trial court admitting into evidence a plaster cast of a footprint. After his arrest, Smith's shoes were taken from him at about 6 a.m. on February 17. They were wet and muddy. A footprint in the path near the trolley bed was photographed, and, on the same day, Richard K. Spencer, a detective in the state police department, who was trained and experienced in such work, examined the footprint for peculiar characteristics noted on the shoe. He testified

that there were worn areas on the right shoe in the center of the sole and in the area under the right great toe; that the areas of the print corresponding to the worn areas of the shoe had not been depressed in the same manner as the rest of the sole had depressed the surrounding area; and that such areas were of the same general shape as the worn areas of the shoe. Spencer testified further that he had received training in the making of plaster casts of footprints and the making of comparisons of footprints and the objects making the impression in the ground; that he performed such work for the state police department over a period of eight years; and that he had made a plaster cast of the footprint in this case. At this point the state offered the plaster cast in evidence as an exhibit. Smith objected on the ground that the footprint may have been taken a half mile or a quarter of a mile away from the scene and that "[u]ntil it can be tied in, it's immaterial." The trial court overruled the objection, the plaster cast was received in evidence as an exhibit, and Smith's counsel noted an exception. Later Spencer testified that the print of which the exhibit was a plaster cast was made by Smith's right shoe. In making this ruling, the trial court was aware that, prior to Spencer's testimony, evidence had been introduced that the police found one set of footprints leading up to Judd's package store and from there to the back door of Dee's department store, across the parking lot and up a path which runs alongside the river. There was only one set of footprints in the area except for those of the police. Impressions of the footprints were left in the soil going along the path leading to the trolley bed. The soil west of Dee's department store was sandy and packed more in some places than in others. The footprint, of

which Spencer made the cast, was on the footpath 351 feet from Dee's department store. There was ample evidence connecting the footprint to Smith, and the ruling of the trial court was correct.

Both defendants assign error in a ruling of the trial court admitting in evidence a tire iron found two days later near the river bank about 260 to 265 feet from the rear of Dee's department store, a short distance from the footprint of which a cast was made and offered in evidence. There was evidence that the tire iron matched the marks on the doorknob and in the wood along the frame in that it fitted into the marks. The prying end matched the marks along the frame of the door. The shaft of the tire iron fitted along the doorknob where there was a dent in the knob. The indentations were caused by the tire iron. There were scratch marks on the tire iron. The other end of the tire iron fitted the lug nuts of the Smith car, a 1959 Ford. Only a very small percentage of other cars had the same size lug nut as the Smith car. The defendants objected on the ground that there was no evidence connecting the tire iron with them, that it was of common design and that no proper foundation for its introduction had been laid. The court overruled the objection, and an exception was taken. Later in the trial, evidence was introduced that the tire iron caused the indentations in the door and that a search of the Ford car used by the defendants disclosed the presence of a jack and the absence of any tire iron in the car. In argument, the defendants stressed a statement made by the trial court in a discussion on the admissibility of the tire iron wherein the court said that, if the state did not connect the tire iron with the defendants, the court would take care of it at the correct time. This statement by the court was

made before the state had completed its foundation for the introduction of the tire iron. At the time the court overruled the defendants' objections, there was ample evidence to justify its admission in evidence. The defendants now take the position that, because of the court's statement, the defendants were entitled to do nothing further. At no time thereafter did the defendants move to have the evidence stricken from the record or request the court to charge the jury to disregard it, and the court did neither. No exception was taken to the court's charge. Although the trial judge must be solicitous to protect the rights of the accused, the defense is not relieved of its obligation to inform the court in timely fashion of its claims during the course of the trial. The defendants' claim of error on this ground cannot be sustained.

The defendants also assign error in the claimed refusal of the trial court to grant separate trials to the defendants. There is nothing in the record to indicate that either of the defendants moved for a separate trial. "This court is not bound to consider claims of law not made at the trial. *Harry* v. *Bidwell*, 149 Conn. 93, 98, 175 A.2d 704. This rule applies to criminal as well as civil cases. *State* v. *Sul*, 146 Conn. 78, 81, 147 A.2d 686. While it is true that we have applied this rule with some flexibility in capital cases, such as in *State* v. *Walters*, 145 Conn. 60, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45, and *State* v. *Reid*, 146 Conn. 227, 149 A.2d 698, this policy does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal." *State* v. *Taylor,*

153 Conn. 72, 86, 214 A.2d 362. "Unless a substantial injustice is shown, we are not required on appeal to entertain a claim which was not made in or passed upon by the trial court. *State* v. *Rafanello,* 151 Conn. 453, 456, 199 A.2d 13; *Paley* v. *Connecticut Medical Examining Board,* 142 Conn. 522, 529, 115 A.2d 448." *State* v. *Fredericks,* 154 Conn. 68, 72, 221 A.2d 585. We find nothing in the record to indicate any such injustice.

There is no error.

In this opinion the other judges concurred.