STATE OF CONNECTICUT *v.* ALPHONSO JOHNSON

PETERS, HEALEY, PARSKEY, SPONZO and BRENNAN, Js.

Argued March 5—decision released September 28, 1982

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

BRENNAN, J. After a jury trial, the defendant was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and also of conspiracy to commit robbery in the first degree in violation of General Statutes § 53a-48. The defendant has appealed, claiming error in (1) the court's instructions during the course of the trial concerning discussion of the evidence by the jurors and alternates; (2) the admission of prior conviction evidence and the absence of limiting instructions thereon; (3) the admission of physical evidence; (4) the charge to the jury; and (5) the denial of the defendant's motions for acquittal. We find no error.

The following facts which the jury might reasonably have found are pertinent in considering the merits of this appeal: In the early afternoon of May 12, 1978, the defendant parked a stolen green Oldsmobile on East Ramsdell Street in New Haven near its intersection with Whalley Avenue, leaving the motor running. In the front seat with him was Audrey Ashe, while Michael Edwards and Robin Roaix were seated in the rear passenger seat. Edwards passed an object to the defendant who thereafter exited the vehicle and placed an object into his belt. Ashe simultaneously left the car wearing a maroon ski mask on top of her head. The defendant and Ashe crossed the street and entered the Hartford National Bank. The defend-

ant wore a rain hat and both he and Ashe carried loaded revolvers. The defendant removed money from drawers at several tellers' stations and placed it in a white plastic bag, while Ashe stood guard over the employees and customers. There was no observable commotion in the car during the course of the robbery. The two then left the bank, and entered the Oldsmobile from the right side after Roaix had opened the door for them. Edwards then drove off at a high rate of speed. When the car was stopped by police at the West Haven Toll Plaza, four suspects, including the defendant and Ashe, were found in it. Additionally, there were discovered in the car two loaded handguns, the defendant's hat, Ashe's ski mask, and a white plastic bag containing the bank's money. All four occupants of the car were taken into custody. At trial, the defendant claimed that the robbery was not premeditated, and that none of the others had at any time voluntarily agreed to rob the bank, doing so only at his violent urging.

# I

The defendant has first alleged that the trial court's admonitions to the jury during the trial of the case constituted error.[1] Those admonitions, the

---

[1] The various admonitions in question were as follows:

"I would admonish you, please do not discuss the case with your family at home."

"Do not form any opinions or come to any conclusions, or make any judgments until the case is over."

"Do not discuss the case except when you are all together in the jury deliberating room."

"Don't come to any conclusion or make any decisions. You haven't heard all the evidence. Please don't discuss the evidence unless you are all together in this room."

"Don't discuss the case until you are all together in the jury deliberating room, and don't come to any conclusions or make any judgments."

defendant claims, violate the due process clauses of the federal and state constitutions[2] and the right to a trial by an impartial jury,[3] because they permitted jurors to discuss the case before its submission to them.

The defendant did not object to the admonitions at trial. Therefore, this belatedly raised claim must fall into one of the two situations which may constitute "exceptional circumstances" such that it can and will be considered by this court. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The first exception is applicable where a new constitutional right not readily forseeable has arisen between the time of trial and appeal, and the second exception where the record adequately supports a claim that the litigant has clearly been deprived of a fundamental constitutional right and a fair trial. Id.

The defendant in pressing his claim of reversible error contends that *State* v. *Washington,* 182 Conn.

---

[2] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law . . . ."

The constitution of Connecticut, article first, § 8, provides in relevant part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

[3] The sixth amendment to the United States constitution provides, inter alia: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." This guarantee has been made applicable to the states by incorporation into the fourteenth amendment. See *Duncan* v. *Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, reh. denied, 392 U.S. 947, 88 S. Ct. 2270, 20 L. Ed. 2d 1412 (1968).

The constitution of Connecticut, article first, § 8, provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . to a speedy, public trial by an impartial jury."

419, 438 A.2d 1144 (1980), announced a new constitutional right not readily foreseeable at the time of his trial. In *State* v. *Washington,* decided twenty-three months after the jury returned its verdict in the present case, we held that it was error of constitutional magnitude for the trial court expressly to instruct the jurors that they might discuss the case among themselves prior to its submission to them. Id., 429. Review of a claimed violation of a constitutional right not perfected at trial and to which no exception was taken is justified under the first prong of the *Evans* test only where the neglected claim "appeared to lack semblance of merit because it was clearly contrary to settled state law . . . ." *State* v. *Evans,* supra, 67–68; *O'Connor* v. *Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189 (1966). "A decision establishes a new principle of law 'either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.' *Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 106, 92 S. Ct. 349, 355, 30 L. Ed. 2d 296 (1971)." (Citations omitted.) *Battie* v. *Estelle,* 655 F. 2d 692, 697 (1981).

*State* v. *Washington* upset no established state procedure permitting pre-submission juror discussion. Relying on the well settled law of other jurisdictions, the opinion itself noted that prohibition of premature juror discussion was "the common-law practice which has been followed for more than 150 years." *State* v. *Washington,* supra, 427; *State* v. *Darwin,* 155 Conn. 124, 144, 230 A.2d 573 (1967), rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630 (1968). Therefore, the claims of error are not reviewable under the first *Evans* exception.

The defendant also contends that the trial court's admonitions to the jury fall within the purview of the second exception. For that to be true, however, the record should be sufficiently complete and clearly disclose that the litigant has been deprived of a fundamental constitutional right and a fair trial. We do not believe that the record indicates this. We therefore do not reach this claim of error.

## II

### A

The second contention of the defendant is that the trial court erred in permitting introduction of his prior felony convictions into evidence. The credibility of the defendant was in question, as his claim was that his three companions were not willing accomplices in the crime, but took part only after threats of physical violence from him. The defendant claims that the introduction of his past convictions into evidence was error in that the prejudicial effect of this evidence outweighed its probative value, and, consequently, denied him a fair trial.

It is well established that a defendant's credibility may be impeached by proof of prior convictions of crimes for which imprisonment may be more than one year. General Statutes § 52-145; *State* v. *Shaw*, 185 Conn. 372, 383, 441 A.2d 561 (1981); *State* v. *Townsend*, 167 Conn. 539, 563, 356 A.2d 125, cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975); *State* v. *Jones*, 167 Conn. 228, 236, 355 A.2d 95 (1974); *State* v. *Hall*, 165 Conn. 599, 606, 345 A.2d 17 (1973); *State* v. *Marquez*, 160 Conn. 47, 52–53, 273 A.2d 689 (1970).

There are various factors which the court must consider in determining whether the prejudicial

effect of the evidence outweighs its probative value, among them, " 'the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy. . . . This balancing of intangibles—probative values against probative dangers—is so much a matter where wise judges in particular situations may differ that a lee-way of discretion is generally recognized.' McCormick, Evidence, pp. 319–20; see also 6 Wigmore, Evidence (3d Ed.) § 1904." *State* v. *Bitting,* 162 Conn. 1, 10, 291 A.2d 240 (1971).

In reviewing the correctness of the trial court's ruling in such a matter, the trial court enjoys the presumption that its decision in a matter of discretion was correct. *State* v. *Bitting,* supra, 11; *Cables* v. *Bristol Water Co.,* 86 Conn. 223, 225, 84 A. 928 (1912). "[T]he ultimate issue is whether the court could reasonably conclude as it did. *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463 [1959]." *State* v. *Bitting,* supra.

The defendant testified that he coerced his accomplices into committing the crime. The credibility of that statement was relevant to whether there was a conspiracy to commit robbery in the first degree. Therefore, the defendant's prior convictions served to shed light on the issue of whether his accomplices voluntarily participated in the crime. Thus, the record in the present case reveals no abuse of the discretion invested in the trial court in denying the defendant's motion.

### B

At trial, after offering his statement regarding the crime which he had given the New Haven police department, the defendant introduced his prior

felony convictions into evidence. The defendant did not request a limiting instruction concerning them, and the court did not address them in its charge.

The defendant contends for the first time on appeal that his right to a fair trial was denied by the court's failure to instruct the jury that evidence of the defendant's prior convictions could only be considered for impeachment purposes. The defendant's counsel is ordinarily under an obligation to request such a limiting instruction. *United States* v. *Conley,* 523 F.2d 650, 655 (8th Cir. 1975), cert. denied, 424 U.S. 920, 96 S. Ct. 1125, 47 L. Ed. 2d 327 (1976); *Nutt* v. *United States,* 335 F.2d 817, 818–19, (10th Cir.), cert. denied, 379 U.S. 909, 85 S. Ct. 203, 13 L. Ed. 2d 180 (1964). The defendant admits that he failed to request a limiting instruction but contends that the trial court had a responsibility to instruct the jury sua sponte that evidence of prior convictions could be used only to impeach his credibility and not as substantive evidence of guilt.

The issue is whether there was a conspiracy, not whether the defendant committed the crime of robbery in the first degree. Conceivably, the defendant may have desired his record of prior convictions admitted into evidence as a tactical move. It might be concluded that because of his prior convictions of violent crimes that he had forced his associates to assist him in this crime, thus vindicating him of the conspiracy charge. Under such circumstances a charge by the court that the jury was to consider the defendant's prior felony convictions only in weighing his testimony could serve only to reduce the possibility of convincing the jury that no conspiracy existed.

Absent a request, the court cannot be required to determine whether or not to give a limiting instruction when, as here, for tactical purposes the defendant might very well have not desired one. "Contrary to the impression which seems to prevail in some quarters, it is not true that defense counsel in criminal cases may through neglect, inattention or as a trial strategy refrain from making proper objection or raising in the trial court any available constitutional defenses, confident that if the outcome of the trial proves unsatisfactory without making objections and taking exceptions . . . they may still prevail by assigning error or raising the constitutional issue for the first time on the appeal." *State* v. *Evans,* 165 Conn. 61, 67, 327 A.2d 576 (1973); *State* v. *Hawkins,* 162 Conn. 514, 517–18, 294 A.2d 584 (1972); *Weyls* v. *Zoning Board of Appeals,* 161 Conn. 516, 521, 290 A.2d 350 (1971); *State* v. *Smith,* 156 Conn. 378, 386–87, 242 A.2d 763 (1968); *State* v. *Spellman,* 153 Conn. 65, 67–68, 212 A.2d 413 (1965). Other courts have concluded that omission of a limiting instruction was not error of a magnitude sufficient for reversal; *United States* v. *Miller,* 664 F.2d 94, 98 (5th Cir. 1981); *United States* v. *DeLaMotte,* 434 F.2d 289, 294 (2d Cir. 1970), cert. denied, 401 U.S. 921, 91 S. Ct. 910, 27 L. Ed. 2d 825 (1971); *Straight* v. *State,* 397 So. 2d 903, 905 (Fla.), cert. denied, 454 U.S. 1022, 102 S. Ct. 556, 70 L. Ed. 2d 418 (1981); *Roberts* v. *State,* 419 N.E.2d 803, 808 (Ind. App. 1981); *State* v. *True,* 438 A.2d 460, 471 (Me. 1981); *People* v. *Rosado,* 79 App. Div. 2d 666, 433 N.Y.S.2d 847 (1980); and this court is in accord with that view in this case. There is no error in this respect.

## III

The defendant claims that the court erred in its admission into evidence, on rebuttal, of the white stocking masks and the testimony of Officer Roy Olson concerning them.

These masks had been found in Ashe's pocketbook when the car carrying the defendant and the three other occupants had been stopped by police shortly after the robbery. The defendant claimed that they were irrelevant to the crime for which he was charged and would be highly prejudicial to him. They were admitted into evidence over the defendant's objection. Later, also over the defendant's objection, the court permitted Olson to testify that masks such as those disguised facial features by compressing and distorting them.

" 'Evidence as to articles found in the possession of an accused person subsequent to the time of the commission of a crime for which he is being tried is admissible only if it tends to establish a fact in issue or to corroborate other direct evidence in the case. . . .' " *State* v. *Acklin,* 171 Conn. 105, 114, 368 A.2d 212 (1976); see *State* v. *Onofrio,* 179 Conn. 23, 28, 425 A.2d 560 (1979). The admission of such evidence is controlled by a consideration of its relevancy and probative value as opposed to its prejudicial effect. *State* v. *Turcio,* 178 Conn. 116, 138, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); *State* v. *Ralls,* 167 Conn. 408, 417, 356 A.2d 147 (1974).

In the present case, evidence was offered that prior to entering the bank, the defendant was handed an object which he placed in his waistband, that there was no quarreling, fighting, or other commotion in the car during the course of the rob-

bery, that prior to defendant's exiting the bank a passenger jumped into the front seat, and that a woman opened the car door for the defendant and Ashe after the robbery. In addition, the state offered into evidence the maroon stocking mask used in the robbery, and the white stocking masks found in the car after the robbery, which, together with the other evidence, strongly tended to establish a conspiracy. This distinguishes the present case from *State* v. *Acklin,* 171 Conn. 105, 368 A.2d 212 (1976), where there was no other corroborating evidence of a conspiracy, merely the masks and rope. Thus, in *Acklin* there was a dearth of evidence of a conspiracy whereas in the present case a surfeit of evidence of a conspiracy exists. In *Acklin,* "the prejudicial effect of the ropes and masks so far outweighed their minimal probative value that their admission into evidence constituted an abuse of the trial court's discretion. *State* v. *Johnson,* 160 Conn. 28, 33, 273 A.2d 702 [1970]." *State* v. *Acklin,* supra, 115. The masks and rope in *Acklin* were tenuous evidence of a conspiracy as no other evidence of one existed. In the present case, considering the other evidence, the introduction of the masks was clearly in a different category, and, contrary to the *Acklin* case, not tenuous evidence. The prejudicial effect of the introduction of the masks and rope in *Acklin* was great, while here the prejudicial effect was minimal, when considered with all the other evidence tending to establish a conspiracy. Thus, the probative value of the evidence far outweighed its prejudicial effect.

Furthermore, the state offered the masks to establish the conspiracy charge, a fact in issue. It had introduced evidence concerning the actions and conduct of the defendant and those with him during

the course of the robbery to show that a conspiracy existed among them. The defendant had thereafter testified that he had not discussed the plans for the robbery with the others, that they had not voluntarily agreed to rob the bank with him, and that Ashe had accompanied him into the bank only after being threatened and struck by him.

The admission of the three stocking masks and the testimony of Olson tended to corroborate other direct evidence that a conspiracy did in fact exist between the defendant and his associates, thus meeting the test of admissibility as laid down in *Acklin*.

## IV

### A

The defendant next claims that the court erred in failing to give the jury the statutory definition of "intent" contained in General Statutes § 53a-3 (11).[4] The defendant neither requested such an instruction nor excepted to the charge as given by the court.[5] He now seeks review of this claim, contend-

[4] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[5] Following are pertinent excerpts from the charge of the trial court concerning intent:

"Intention, the State must prove that property was taken by the defendant with the specific intention of depriving the owner or some other person, who had it in his possession or under his control at the time, of it, or of appropriating it to himself or to some third person. To intend to deprive another of property means (2) intending to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him or (b) intending to dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property. To intend to appropriate property to oneself or to a third person means: (a) intending to exercise control over it

ing that the court's instructions violated the rule of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and thus came within the "exceptional circumstances" rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), permitting review of that claim by this court.

This court will review the claimed error where, as here, the claim that the defendant has been deprived of a fundamental constitutional right and a fair trial is adequately supported by the record. *State* v. *Evans,* supra, 70; see *State* v. *Williams,* 182 Conn. 262, 267, 438 A.2d 80 (1980).

permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit . . . [to] oneself or a third person.

\* \* \* \* \*

"[W]hat a person's purpose or intention has been is necessarily very largely a matter of inference. A person may take the stand and testify directly as to what his or [her] purpose or intention was, and that testimony you can believe or not, according to whether or not it warrants belief. But no witness can be expected to come here and testify that he looked into another person's mind and saw that a certain purpose or intention—and saw therein a certain purpose or intention. The only way in which a jury can determine what a person's purpose or intention was, at any given time, aside from that person's own testimony is by determining what the person's conduct was and what the circumstances were surrounding that conduct, and from those infer what his purpose or intention was.

\* \* \* \* \*

"Concerning criminal [intent], there is a general principle of law which applies in nearly every criminal case, and certainly applies in this case, that in order to be guilty of a crime, an accused must have a criminal intent or guilty knowledge. This means that before an accused should be found guilty of a crime, it must appear and be found beyond a reasonable doubt that in doing the acts complained of, that the accused had a guilty mind, or, as it is sometimes stated, an intent to do evil.

"If, in doing the acts complained of, an accused has not the required intent, then he is not guilty of the crime.

"If the accused has done an act accidently, without gross negligence, the act is not a crime, because it was not done with an evil intent."

This court must consider the whole charge in determining whether an error in the charge constitutes reversible error. *Cupp* v. *Naughten,* 414 U.S. 141, 146–47, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Williams,* supra, 30. Where an appeal does not involve a constitutional question, the court must determine whether it is reasonably probable that the jury was misled. *State* v. *Williams,* supra, 30; *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147 (1974). Where the appeal concerns a constitutional question, the test is whether it is reasonably possible that the jury was misled. *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); *State* v. *Annunziato,* 169 Conn. 517, 532 n.7, 363 A.2d 1011 (1975).

The charge as a whole should be examined to determine if it so instructs the jury that no injustice is done to the legal rights of the defendant. *State* v. *Williams,* supra.

The defendant contends that the failure of the court to define "intent" in accordance with the definition in General Statutes § 53a-3 (11) resulted in prejudice to him. After reviewing the entire charge, however, we conclude that the instructions of the trial court concerning the meaning of "intent" went notably beyond the mere statutory definition of the word and were sufficient to explain to the jury its meaning. *State* v. *Mason,* 186 Conn. 574, 586–87, 442 A.2d 1335 (1982).

The instructions of the court could not have misled the jury. No error is found in the explanation of "intent" by the trial court.

## B

The defendant claims the court erred in failing to instruct the jury that they might consider the defendant guilty of conspiracy to commit robbery in a lesser degree than first degree and that a finding of guilty of both offenses would not have to be in the same degree for each charge.

At trial, the jury were instructed on the elements of robbery in all three degrees and on larceny in the first and second degrees. No request was made to charge on the lesser included offenses of conspiracy to commit robbery in the first degree, none was given by the court, and no exception was taken. The defendant claims error in the failure of the court so to charge.

For a defendant to be entitled to an instruction on a lesser offense, four conditions must be met, the first of which requires that "an appropriate instruction" be requested by either the state or the defendant. *State* v. *Cannon,* 185 Conn. 260, 266, 440 A.2d 927 (1981); *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). Absent such a request, the refusal of the court so to charge is justified. *State* v. *Kolinsky,* 182 Conn. 533, 544, 438 A.2d 762 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1981).

We find no error in the failure of the trial court so to charge.

## V

At the close of the state's case in chief and at the close of all the evidence, the defendant filed a motion for a judgment of acquittal which, while directed to both counts of the information, was primarily concerned with the legal sufficiency of the evidence to

support the conspiracy charge. These motions were denied by the trial court. The defendant claims error in the court's denial of these motions, contending that the state failed to prove beyond a reasonable doubt the essential element of an "agreement" set forth in the conspiracy statute, General Statutes § 53a-48.

"[I]n a criminal prosecution, the state has the burden of proving the case set forth in the information in all its material parts beyond a reasonable doubt, so that the court must find, in order to convict, that all the elements of the crime charged have been established beyond a reasonable doubt." *State v. Nieves,* 186 Conn. 26, 29, 438 A.2d 1183 (1982), quoting *State v. Johnson,* 162 Conn. 215, 231, 292 A.2d 903 (1972). In considering whether a verdict can be sustained by the evidence, " 'the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond reasonable doubt.' " *State v. Giguere,* 184 Conn. 400, 402–403, 439 A.2d 1040 (1981). "In ruling on such a motion, the evidence presented at the trial must be given a construction most favorable to sustaining the jury's verdict." *State v. Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978).

The defendant claimed, inter alia, that he did not discuss his plan to rob the bank with any of the other defendants, that none of them voluntarily agreed to participate, that prior to the robbery he said nothing to the other defendants about the proceeds of the crime, and that his associates were at all times acting under duress. He further stated

that while seated in the car prior to entering the bank he struck Ashe after she attempted to dissuade him from doing so. On the other hand, a witness who viewed the defendant and the other occupants of the car both before and after the robbery testified that she did not see any of the passengers struck and that she observed a rear passenger climb into the driver's seat as soon as the defendant left the car. A police officer testified concerning the seizure of two white stocking masks found in Ashe's pocketbook in the car at the time defendant was apprehended. Ashe wore a maroon ski mask during the robbery.

After reviewing the evidence, we conclude that it was sufficient to justify the verdict of guilty of conspiracy to commit robbery in the first degree. It was not necessary that a formal agreement between the defendant and his associates be established. It was sufficient that they knowingly engaged in a mutual plan to do a forbidden "act." *State* v. *Holmes,* 160 Conn. 140, 149, 274 A.2d 153 (1970). "Conspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons." Id., 150. In viewing the evidence as a whole, we conclude that the jury could reasonably have inferred that there existed between the defendant and his associates a mutual plan or agreement to commit the robbery. The defendant's motions for acquittal were properly denied.

There is no error.

In this opinion the other judges concurred.